**Ruth Finer FRIEDMAN, Plaintiff,**

v.

**BACHE & CO., Inc., a New York corporation, Defendant.**

**No. 69–125–Civ.**

United States District Court, S. D. Florida.

May 12, 1970.

Kelly, Black, Black & Kenny, Miami, Fla., for plaintiff.

Fowler, White, Humkey, Burnett, Hurley & Banick, Miami, Fla., for defendant.

### FINDINGS AND CONCLUSIONS— DEFENDANT'S MOTION FOR DIRECTED VERDICT

MEHRTENS, District Judge.

This action was commenced by RUTH FINER FRIEDMAN, a/k/a RUTH FRIEDMAN SCHOENER (plaintiff having married subsequent to the commencement hereof) against BACHE & CO., INC., a securities broker, wherein plaintiff sought money damages, compensatory and punitive, based upon alleged violations by defendant of Sections 10 and 15(c) (1), (2) of the Securities and Exchange Act of 1934 and rules of the Securities and Exchange Commission promulgated in reference thereto. Plaintiff also sought money damages, compensatory and punitive, for alleged violations by defendant of Section 517.-301, Florida Statutes, F.S.A., under the device of pendent jurisdiction.

The cause came on for trial, pursuant to notice, before the Court and a jury, and at the close of evidence offered by the plaintiff, defendant moved for a directed verdict on the grounds, inter alia, that plaintiff failed to prove as a matter of law that she was entitled to recovery, that it affirmatively appeared from the evidence presented that plaintiff and defendant had voluntarily entered into valid and binding agreements which settled and resolved the controversies complained of by plaintiff herein after such controversies arose, that it further affirmatively appeared that plaintiff had failed to mitigate damages and that plaintiff failed to introduce any competent evidence of any damages sustained by her as a result of any acts of defendant.

Plaintiff maintained a stock brokerage account with and was a customer of defendant from 1961 through 1967 and her claims herein relate to two restrictions of trading in her account, namely, from March 7, 1966 until March 30, 1966, and from late September, 1966 through April, 1967.

The first restriction in plaintiff's account was imposed by defendant promptly following defendant having been served with a Summons and Complaint in a lawsuit initiated by plaintiff's mother and father against plaintiff and defendant. In their sworn Complaint the parents of plaintiff alleged, inter alia, that plaintiff had wrongfully and illegally obtained and had converted to her own use certain stock certificates owned by the parents of a value of approximately $100,000.00, and that plaintiff had deposited those certificates with the defendant. The Complaint further alleged that any subsequent trading in plaintiff's account would be at defendant's risk and liability.

On or about March 7, 1966, defendant restricted all trading in plaintiff's account and plaintiff was immediately notified that defendant would accept no orders from her nor would it permit any withdrawals from plaintiff's account by virtue of the lawsuit commenced by her parents. The record is uncontroverted that in April, 1965, plaintiff deposited with defendant, for her account, with one exception, the securities as described in the parents' lawsuit. The record also is uncontroverted that plaintiff was aware of a controversy with her parents in reference to the said stocks in January, 1965, when she first consulted her attorney in reference thereto. Upon being notified of the complete restriction in her account, plaintiff consulted with her attorney and authorized him to negotiate with defendant to remove the restrictions theretofore imposed upon plaintiff's account. There were then several conversations and an exchange of correspondence between plaintiff's and defendant's attorneys, as a result of which a release of restrictions was agreed upon, with defendant's attorney to prepare a written agreement in accord with the oral understanding, which was to be forwarded to plaintiff's attorney for approval and execution by plaintiff.

Subsequently, on or about March 30, 1966, plaintiff's attorney received the written agreement from defendant which was entitled "Agreement of Re-

lease and Indemnification" and which contained a provision releasing defendant from any claims of plaintiff as a result of defendant restricting trading in plaintiff's account. Upon receipt of the agreement, per his testimony in this cause, plaintiff's attorney concluded that the written agreement did not conform to the oral understanding with defendant's attorney, but that he nonetheless, following a lengthy conference with plaintiff, advised her to sign it. Plaintiff testified that she discussed the content of the agreement at length with her attorney, read it, did not voice any objection to any provision thereof, and, with the advice of her attorney, signed it. Plaintiff then presented the executed agreement to defendant, whereupon all restrictions in her account were removed.

The second restriction in plaintiff's account, which the Court finds to be totally independent of the first restriction, arose as a result of plaintiff issuing to defendant in March, 1966, a check in the amount of $8,423.02 in payment of the purchase price of stock. That check was deposited by defendant, but it was returned due to an inconsistency between the written and numeral amount. The check was corrected and re-deposited by defendant and thereupon plaintiff directed her bank to stop payment on said check, which was never paid. In latter September, 1966, defendant discovered that it had made a bookkeeping error by having credited the amount of said check to plaintiff's account, whereas the amount of said check should have been debited to her account. Upon discovery of the error, it was promptly brought to plaintiff's attention and upon plaintiff's request defendant submitted documentation therefor to plaintiff's counsel. The indebtedness to defendant as a result of said check was at no time disputed by plaintiff or her attorney. It is undisputed that defendant had a contractual and legal right to arbitrarily sell stock in plaintiff's account sufficient to discharge said indebtedness and that plaintiff at that time had sufficient stocks in

her account to do so. At the urging of plaintiff and her attorney, however, because the market was then declining, and plaintiff would have suffered a loss had stocks at that time been sold, plaintiff's attorney, with plaintiff's knowledge and approval, proposed an agreement, which was accepted by defendant, whereby defendant would not liquidate securities in plaintiff's account sufficient to discharge the indebtedness, that plaintiff, because of a declining market, would not then be required to sell stocks in her account, that plaintiff would be afforded selectivity of stocks to be sold and dates of sale of stocks in her account with the proceeds thereof to be used to discharge the debt. Until such time as the indebtedness was paid, plaintiff agreed not to purchase any stocks in her account, the restriction against purchases being the subject of this claim.

The evidence is undisputed that at all times between September, 1966 and April, 1967, plaintiff had ample stocks in her account and other independent financial means with which to discharge the acknowledged indebtedness and to remove the restriction against purchases, but that plaintiff elected not to do so. Instead, according to plaintiff's testimony (which was contradicted by the testimony of her broker), plaintiff claimed to have attempted to purchase securities through defendant knowing full well that such purchase orders would not be executed.

Plaintiff asserted at trial that the agreements relating to the restrictions of trading in her account were void because of duress, plaintiff having had no alternative but to enter into the agreements with defendant due to her limited financial circumstances and the status of the stock market.

The Court finds upon the undisputed facts, all the evidence introduced by plaintiff and all reasonable inferences to be favorably drawn therefrom that plaintiff has failed as a matter of law to introduce evidence sufficient to warrant the submission of this cause to

the jury on either restriction complained of by her.

■ In addition to reasonable alternatives having existed, which plaintiff could have utilized, the agreements were not shown to have been the product of any type of duress which would relieve plaintiff of their binding effect.

■■ One of the elements of actionable duress is that the circumstances involved allow a person no alternative. See United States v. Bethlehem Steel Corp., 315 U.S. 289, 62 S.Ct. 581, 86 L. Ed. 855 (1942) and United States v. Bell, 259 F.Supp. 602 (N.D.Okla.1966). Further, it is well established that duress cannot be predicated upon a threat or the performance of an act which a person has a lawful right to perform and duress is not established merely by proof that consent was secured by the pressure of financial necessity or circumstances of the person seeking to assert it. Kohen v. H. S. Crocker Co., 260 F.2d 709 (5th Cir. 1958); W. R. Grimshaw Co. v. Nevil C. Withrow Co., 248 F.2d 896 (8th Cir. 1957). Plaintiff herein has failed to prove that any act of defendant was unlawful or that the pressure, if any, exerted upon her was anything other than that of her own financial circumstances which, according to the documentary evidence, were neither limited nor extreme.

■ As to the first restriction, plaintiff has failed to show that defendant acted unlawfully in acting as it did upon being named a defendant in the litigation initiated by plaintiff's parents which clearly established an adverse claim to the assets in defendant's possession for plaintiff's account. As to the second restriction, it is uncontested that defendant had an absolute right to liquidate securities in plaintiff's account sufficient to discharge the indebtedness and that securities were available for that purpose upon discovery by defendant of the bookkeeping error. Accordingly, and as a matter of law, particularly since defendant relinquished its right of liquidation, plaintiff's agreement not to buy until the indebtedness was discharged cannot be deemed to have been entered into under duress or compulsion.

■ The Court further finds that plaintiff has failed to prove by any competent evidence any damages which could be submitted to the jury. It is the Court's opinion that the unexecuted buy and sell orders, offered into evidence by plaintiff, are totally insufficient for that purpose. Plaintiff knew at all times that none of the purported orders that she submitted to defendant would have been executed and therefore plaintiff at no time had any financial responsibility in conjunction with the purported orders as claimed by her.

It is therefore the opinion of this Court that defendant's Motion for Directed Verdict is well taken and said motion is hereby granted.