821 F.2d 581
 8 Fed.R.Serv.3d 591
 J. Richard FINN and Regina R. Finn,
Plaintiffs-Counter-Defendants-Appellants,
v.
PRUDENTIAL-BACHE SECURITIES, INC., etc., and John Kenning,
an individual, Defendants-Counter-Plaintiffs-Appellees.
 No. 85-5513.
 United States Court of Appeals,
Eleventh Circuit.
 July 15, 1987.
 
 Fred W. Mattlin and Gloria Oshman North, Siemon, Larsen, Mattlin & Purdy, Boca Raton, Fla., for plaintiffs-counter-defendants-appellants.
 Douglas C. Broeker, Michael J. Cappucio and Curtis Carlson, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for defendants-counter-plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HILL, Circuit Judge, HENDERSON* and BROWN,** Senior Circuit Judges.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 J. Richard Finn and Regina R. Finn appeal from the judgment of the United States District Court for the Southern District of Florida granting summary judgment against them and in favor of John Kenning and Prudential-Bache Securities, Inc. (Bache) in their suit alleging violations of federal securities laws. The district court concluded that a release signed by the Finns barred their claims against Bache as a matter of law. We affirm in part and reverse and remand in part.
 
 
 2
 The Finns are a retired Illinois couple who sold their business and moved to South Florida in 1981. In August of that year they opened a joint securities account with Bache in Boca Raton, Florida. The Finns deposited approximately $500,000.00 in this account, which represented the bulk of their retirement fund.
 
 
 3
 The Finns informed the Bache agent responsible for their account, John Kenning, that they had never previously traded in stocks or bonds and that they merely wanted a conservative return on their investment. Kenning represented to the Finns that he was an experienced securities broker and that they could expect a return of $65,000.00 annually if he were allowed to make investments on their behalf. The Finns gave Kenning their permission to make such investments. In the subsequent months, the Finns relied exclusively on Kenning to explain the monthly reports they received from Bache and to handle the investment of their retirement funds.
 
 
 4
 On August 10, 1983, Dennis Easter, Bache's Boca Raton branch manager, phoned Richard Finn and notified him that additional funds in the amount of $530,000.00 were needed to cover losses that had been incurred by the Finns' account. Finn was not aware of any prior losses and had not been advised of any prior shortages. Upon Bache's request, Finn met with Easter and two of Bache's regional managers at 4:30 p.m. on the same day. At this meeting, Finn was told that over $6,000,000.00 in bonds had been purchased by his account and that unless he paid Bache $530,000.00 immediately, the account would be completely liquidated.
 
 
 5
 On the following day, August 11, 1983, Finn spoke to Kenning who told him that Easter was wrong in his assessment of the account and that within a month the market would turn around. At this point, the Finns consulted an attorney, Arthur Sullivan, who arranged a meeting with them for 2:30 p.m. Shortly thereafter, Easter telephoned the Finns and told them that he was ready to liquidate the account. Finn advised Easter that he had not yet talked to his attorney.
 
 
 6
 At 3:30 p.m., the Finns and their attorney went to Bache's office and met with Bache officials and a New York attorney representing the company. The Bache representatives told the Finns that they had to make up the shortage in the account or it would be liquidated. The Finns informed Bache that they had no money to pay the equity loss and another meeting was scheduled for the following morning.
 
 
 7
 On August 12, 1983, the Finns and their lawyer again met with the Bache representatives. During this meeting, Finn sought an explanation from the representatives as to why his account incurred an indebtedness of over $500,000.00 when it should have been handled in a conservative manner. No explanation was forthcoming from the Bache employees.
 
 
 8
 During this meeting, the Finns were shown a financial statement which contained incorrect figures of their assets and net worth. They advised Bache that the financial statement was in error and indicated that Kenning must have fraudulently filled out the form. Also during this meeting, Bache's representatives continued to exert pressure on the Finns by threatening them with liquidation of the account. One of them told the Finns that all of the trading in their account was consistent with Bache's policy and practices and did not constitute violations of the securities laws.
 
 
 9
 Also on August 12, 1983, the Finns were told that, as an alternative to liquidation, they could sign a release and promissory note. In exchange for the Finns' complete release of Bache and Kenning from all claims, Bache agreed to carry the Finns' bond position by loaning them $410,000.00 in the hope that eventually they could recoup their losses. The Finns also would receive $30,000.00 in cash at the time of the signing of the release. Bache informed the Finns that unless they agreed to execute the release and promissory note by August 15, 1983, Bache would liquidate the account.
 
 
 10
 On August 13, 1983, the Finns met again with the Bache representatives and again asked for an explanation of the current status of the account. They were not given a satisfactory answer and were told that there was no time for a full explanation because the account was to be liquidated. Subsequently, the Finns signed the release and promissory note.
 
 
 11
 On August 15, 1983, Bache fired Easter for failing to adequately supervise Kenning. Bache also discharged Kenning and numerous employees in the Boca Raton branch office. Subsequently, Bache filed a lawsuit against Kenning alleging that he had fraudulently handled the accounts of several customers including the Finns.
 
 
 12
 Following the dismissals in the Boca Raton office, another broker was assigned by Bache to handle the Finns' account. Under the terms of the promissory note, the Finns had no control over their assets. Approximately six months later, Bache liquidated the account at a loss of approximately $400,000.00. Shortly thereafter, the Finns filed the present action.
 
 
 13
 The Finns filed their complaint on June 1, 1984,[1] alleging violations of 15 U.S.C. Sec. 78j(b) and Rule 10b-5 promulgated thereunder. On July 3, 1984, Bache submitted its answer which contained the affirmative defense that the Finns' claims were barred by the terms of the release. Bache also filed a counterclaim against the Finns for the $400,000.00 represented by the promissory note.
 
 
 14
 On July 18, 1984, Bache filed a motion for summary judgment alleging that the Finns' claims were barred by the release. This motion was filed before any meaningful discovery had taken place. The Finns responded that the release was void because of economic duress and fraud. On December 17, 1984, the district court granted Bache's motion. The Finns then filed a motion to stay the enforcement of summary judgment. The motion for a stay was granted by the court on January 10, 1985 so that the parties could conduct discovery into the transactions surrounding the execution of the release.
 
 
 15
 After the court stayed the summary judgment order, the parties executed a "Joint Proposed Discovery Schedule" in which they agreed that additional motions for summary judgment could be submitted to the court thirty days after the completion of discovery. Between February 13, 1985 and April 18, 1985, the parties proceeded with further discovery. During this time, the Finns filed two motions to compel discovery and a motion for sanctions based on Bache's alleged failure to comply with two court orders requiring it to produce certain documents. Before the court ruled on these motions, however, Bache filed a motion to dissolve the stay of the summary judgment. This motion was predicated on a memorandum written by the Finns' attorney which summarized the events surrounding the signing of the release. After hearing oral argument on Bache's motion, the district court dissolved the stay entered on January 10, 1985 and granted summary judgment against the Finns. This order was entered before the expiration of the discovery period and before a ruling was made on the pending discovery motions.[2]
 
 
 16
 On appeal, the Finns assign error on several grounds. First, they claim that the district court abused its discretion by granting Bache's motion to dissolve the stay before meaningful discovery had taken place. Second, they contend that the district court erred by holding that there were no material issues of fact remaining as to the invalidity of the release. And, finally, they urge that there was a lack of consideration for the release.
 
 
 17
 Before turning to the merits of the appeal, there are several jurisdictional matters requiring resolution. Although the parties have not pressed these issues, we, of course, are obligated to examine our jurisdiction sua sponte. See Martin v. Campbell, 692 F.2d 112, 114 (11th Cir.1982).
 
 
 18
 At the time the district court dissolved the stay of the summary judgment, Bache's counterclaim was still pending before the court. Therefore, the order granting summary judgment was not a final appealable order. Also, the district court did not enter a Rule 54(b) certificate permitting the appeal. After the notice of appeal was filed, however, the district court dismissed Bache's counterclaim at Bache's request. This dismissal cured the defect caused by the district court's failure to issue a Rule 54(b) certificate. In Campbell, supra, the court, faced with the same problem, stated that "there is an exception to the requirements of Rule 54(b) that allows the separate appeal of a nonfinal judgment where a subsequent judgment of the district court effectively terminates the litigation." Id. at 114. See also Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1231 (5th Cir.1973).[3] Accordingly, Rule 54(b) is not a bar to appellate review in this instance.
 
 
 19
 The other jurisdictional issue involves Fed.R.Civ.P. 58 which provides that a final judgment must be "set forth on a separate document." There is authority in this circuit that an order granting summary judgment is not by itself an appealable order. Calmaquip Eng. West Hemisphere v. West Coast Carriers, 650 F.2d 633, 635-636 (5th Cir. Unit B 1981).[4] In this case, the district court did not enter a final judgment separate from the order granting summary judgment. Bache, however, has never objected to the taking of the appeal without the entry of a separate final judgment and consequently has waived the Rule 58 requirement. Bankers Trust Co. v. Mallis, 435 U.S. 381, 387-388, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978). See also Stein v. Reynolds Securities, Inc., 667 F.2d 33, Fn. 1 (11th Cir.1982) (parties can waive Rule 58 requirement of separate document). Because Bache waived this omission, there is appellate jurisdiction over this controversy.
 
 
 20
 The district court granted Bache's motion for summary judgment because it believed that the release signed by the Finns barred their claims as a matter of law. This release contained the following language:
 
 
 21
 In consideration of the foregoing the undersigned release and forever discharge PBS ... its present and prior officers, directors and employees from any and all claims or causes of action, that have arisen or may arise in law or in equity in connection with any and all investments.
 
 
 22
 Record Excerpts at 39-41. The Finns claim, however, that they were induced to enter into this release because of fraudulent representations made by Bache representatives during the three days immediately preceding the signing of the release and because of economic duress exerted by Bache. The district court held that the Finns failed to point to any material issue of fact respecting either defense.
 
 
 23
 The issue before us is whether the district court correctly concluded that there existed no material issue of fact as to the Finns' claims of fraud and duress. Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985). In making this determination, we view the evidence in the light most favorable to the nonmoving party. Id. If reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied. Id.
 
 
 24
 The Finns claim that the release does not bar their claims because it was procured by fraud. In order to establish fraud under Florida law,[5] a plaintiff must prove 1) the defendant made a false representation of a past or present fact, 2) the defendant knew the statement was false, 3) the statement was made for the purpose of inducing the plaintiff to rely on it, and 4) the plaintiff's reliance was reasonable. Pettinelli v. Danzig, 722 F.2d 706, 709 (11th Cir.1984).
 
 
 25
 In the present case, the Finns allege that Bache's representatives knew that Kenning's conduct violated the securities laws but lied about his conduct in an effort to induce the Finns to sign the release. The district court assumed the truth of these allegations but nonetheless concluded they did "not legally justify an invalidation of the release." Record Excerpts at 263. In arriving at its decision, the court relied on Pettinelli, supra. In Pettinelli, the plaintiffs were investors in a corporation devoted to land development. They claimed that the directors/defendants breached their fiduciary duties and illegally caused stock dilution. The defendants moved for summary judgment citing a release that had been previously entered into by the parties. The Pettinelli court found that the plaintiffs could not rely on fraud as a defense to the release because they were in an adversarial position with the defendants, and hence could not rely on any of their representations. Id. at 710. See also Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893 (1934). The court noted that "throughout this negotiation period appellants knew from their own dealings that they should not rely on any representations made by defendants.... When negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties." Pettinelli at 710, relying on Sutton v. Crane, 101 So.2d 823 (Fla.Dist.Ct.App.1958).
 
 
 26
 In the present case, the district court found as a matter of law that the parties were in an adversarial relationship and therefore the Finns, like the plaintiffs in Pettinelli, had no right to rely on any of Bache's representations. The Finns maintain that there are material issues of fact remaining on this question and that the fiduciary nature of the relationship between Bache and the Finns made reliance upon Bache's representatives reasonable. We disagree. After the Finns were notified of their indebtedness, they retained an attorney to negotiate with Bache. During the negotiations, the Finns learned that a financial statement representing their net worth had been fraudulently submitted by a Bache employee, probably Kenning. Furthermore, the Finns' attorney drafted a memorandum shortly after the release was signed noting that he "explained to Mr. Finn that he probably had a good securities case against Prudential-Bache." Record on Appeal, Vol. III at 674. And, the Finns on at least two occasions inquired of Bache representatives the reason for the mismanagement of their account and were dissatisfied with Bache's responses. In light of all of these facts, it is clear that the positions of the Finns and Bache were antagonistic and the parties were attempting to compromise an existing controversy relating to Bache's alleged mishandling of the Finns' account. Under Florida law, the Finns had no right to rely on Bache's representations and the district court properly granted summary judgment on the fraud claims.[6]
 
 
 27
 The Finns also claim that they are not barred by the release because it was procured under conditions amounting to economic duress. The defense of duress is recognized by Florida law. See e.g., Scutti v. State Road Dept., 220 So.2d 628 (Fla.Dist.Ct.App.1969). The district court's entire discussion of the Finns' duress cause of action is found in one paragraph on page 5 of its original order granting summary judgment. The court stated as follows:As held in the case of Friedman v. Bache & Co., 321 F.Supp. 347 (S.D.Fla.1970), aff'd, 439 F.2d 349 (5th Cir.1971), a case involving a release being given in exchange for a broker's forbearance to liquidate a brokerage account, 'duress' of the nature alleged by plaintiffs in this cause [sic] cannot defeat a release as a matter of law.
 
 
 28
 Record Excerpts at 264.
 
 
 29
 The district court's reliance on the Friedman decision is misplaced. In Friedman, an investor brought suit against an investment firm alleging that the firm placed improper restrictions on her account. The firm moved for a directed verdict on the basis of a release executed by the plaintiff. The district court granted the motion stating:
 
 
 30
 [I]t is well established that duress cannot be predicated upon a threat of the performance of an act which a person has a lawful right to perform and duress is not established merely by proof that consent was secured by the pressure of financial necessity.... [Citations omitted.] Plaintiff herein has failed to prove that any act of defendant was unlawful or that the pressure, if any, exerted upon her was anything other than that of her own financial circumstances which ... were neither limited nor extreme.
 
 
 31
 Id. at 350. (emphasis added).
 
 
 32
 The present case is distinguishable from Friedman in three significant aspects. First, unlike the plaintiff in Friedman, the Finns have raised numerous factual issues relating to the investment firm's alleged unlawful management of their account. Second, the pressure placed on the Finns to sign the release was not the result of any voluntary acts on their part but on the alleged fraudulent activities of Bache's representatives. Third, whereas the financial circumstances of the plaintiff in Friedman were "neither limited nor extreme," the Finns' financial means were both limited and extreme.
 
 
 33
 Bache argues that the Finns' assertion of duress fails as a matter of law because Bache had a legal right to liquidate the Finns' account and therefore the threat of liquidation cannot rise to the level of duress under Florida law. There are, however, material issues of fact as to whether Bache had the legal right to liquidate the account. If the Finns' allegations that Bache fraudulently and unlawfully mismanaged their account are taken as true, as they must for the purposes of this appeal, then Bache's liquidation of the account could very possibly have given rise to a cause of action for unlawful liquidation. See Modern Settings, Inc. v. Prudential-Bache Securities, Inc., 603 F.Supp. 370, 374-75 (S.D.N.Y.1985). If we followed Bache's reasoning, an investment firm could illegally manipulate a customer's account to create a large indebtedness and then use the threat of liquidation as a tool to secure a release of all claims against the firm. We cannot sanction such a result.
 
 
 34
 In City of Miami v. Kory, 394 So.2d 494 (Fla.Dist.Ct.App.1981), the court noted that "there are in essence two factors which must coexist in order to establish duress.... It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side." Id. at 497. The question before us is whether there are material issues of fact relating to both of these elements. The Finns assert that Bache illegally manipulated their account to the point where the Finns owed over $500,000.00 and that because of that indebtedness, coupled with the Finns' lack of any other meaningful assets, they had no choice but to sign the release in order to have an outside chance of recouping their losses. We find that these allegations raise triable issues of fact as to the claim of duress. The district court's order granting Bache's and Kenning's motions for summary judgment was erroneous and the case is remanded for a trial on the issue of duress and any other relevant questions.[7]
 
 
 35
 AFFIRMED in part and REVERSED and REMANDED in part.
 
 
 36
 JOHN R. BROWN, Senior Circuit Judge, concurring and dissenting:
 
 
 37
 While I concur with the majority's reversal and remand to the trial court on the issue of duress, I dissent from the majority's decision to uphold the grant of summary judgment based on the validity of the release bottomed on this circuit's opinion in Pettinelli v. Danzig, 722 F.2d 706 (11th Cir.1984). Viewing the record in a manner most favorable either to the Finns or to Bache, material issues of fact exist that should be decided by a jury (or judge fact-finder) as to whether Bache and the Finns were in an adversarial relationship when the Finns executed the release.
 
 
 38
 From a reading of the majority's opinion, the opinion does not, as required, demonstrate beyond genuine factual controversy at what point the Finns should have known to stop treating Bache as their trusted financial advisor, after which the law would compel them to view Bache as only an adversary with competing, conflicting interests. As is so often the case, the facts make the most powerful legal argument. At the precise point in time at which Bache was extracting the release of its liability to the Finns, Bache had made the decision, implemented two days later, that it would fire, i) Easter, the branch manager, ii) Kenning, the account mastermind, iii) Richard Kiel, operations manager in Boca Raton, iv) John Carpenter, another broker there, v) Gary Kramer, an office employee, and vi) Easter's secretary. Further, Bache was clearly making plans to bring the lawsuit against Kenning alleging fraudulent mishandling of the Finns' and others' accounts. Bache knew of all these pending or completed actions, yet withheld all knowledge from the Finns, until they signed the release.
 
 
 39
 Certainly, the majority does not deny that at some point a fiduciary relationship existed. As a matter of summary judgment law, this relationship was not necessarily extinguished because the Finns brought Arthur Sullivan, their attorney, with them to some of the meetings. As a fiduciary, Bache was required to disclose fully to the Finns, prior to executing the release, all of its conduct concerning the way their account was handled. "[A]n affirmative duty to disclose exists in Florida only if there is a fiduciary relationship between the parties or the facts are solely within the knowledge of the representor or some trick has been employed to prevent an independent investigation by the representee." Hauben v. Harmon, 605 F.2d 920, 924 (5th Cir.1979). In the instant case, we have i) a relationship, ii) facts solely within the knowledge of Bache and iii) no practical way for the Finns to investigate Bache's representations and omissions. The "negotiations" between the Finns and Bache occurred largely during a three-day period. Not beyond summary judgment dispute, the Finns attended the meetings in an informational capacity, attempting to find out how they could have trusted--and lost--their life savings to a major brokerage firm and end up owing that firm more than $400,000. While amazement, bewilderment and consternation abound in this case, there is no semblance either of hard bargaining or awareness that the parties had to consider that the discussion was between sophisticated adversaries, conscious that they were, not the beneficiaries of the laws' demands on a fiduciary, but simply strangers now in an adversarial role.
 
 
 40
 The court holds that as soon as the Finns brought Mr. Sullivan into the picture, the relationship changed altogether from one of trusting beneficiaries and a trustworthy fiduciary into one of strangers locked in mortal (financial) combat. They were, as a matter of law, so the trial court's summary judgment holds, sufficiently protected from Bache's misrepresentations or overreaching. It is important, however, to look at the actions of that attorney once he entered the process. A jury (fact-finder or judge) could find that his role was not that of an informed, zealous, loyal advocate. Rather, his detailed post-conference file memorandum to himself was not made as an historical record of the events. It was made to save his hide in a malpractice claim which any Florida litigant (and counsel) could reasonably expect.
 
 
 41
 Further, although Bache was engaging in reprehensible practices that might well have put a person on notice not to trust its representations, the cumulative effect of Bache's mistreatment of the Finns is clearly demonstrated in the hindsight that the motion for summary judgment imposed on the trial court.
 
 
 42
 During the short three-day "negotiations" period, the Finns were in no position--and their so-called counsel made no effort to assist them--to obtain the necessary information to know that the tables were now turned and they would have to start dealing with Bache in an arms-length, hostile manner. A factfinder (jury or judge) could find that the Finns had a right to rely on Bache's continued obligations to act as a fiduciary and thereby to rely on its representations. There was a genuine controversy on the critical, decisive facts. The trial court could not properly conclude on summary judgment that the Finns had not stated a cause of action of fraud under Florida law. Pettinelli, 722 F.2d at 709.
 
 
 43
 While the Pettinelli case is indeed similar and authoritative, I cannot find it controlling here. As I read Pettinelli, it holds that "[w]hen negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by ... allegedly dishonest parties." Pettinelli, 722 F.2d at 710. The factual controversy is wide open over whether the Finns either would know, or have access to information that would lead them to find out that they were now dealing with persons who just recently were their friendly, compensated advisors and champions whose role had suddenly changed into one of hostile combatants and who, by some quirk of the law were now free to lie, misrepresent or cheat their one-time valued client.
 
 
 44
 Up until the time of the margin call on their bonds, the Finns had seen Bache--as Bache wanted them to see Bache--as their friendly, honest local broker, dispensing expert financial advice with a broad smile, a firm handshake, and, of course, gratitude for all the commissions earned, or at least, received. Suddenly, the court holds, sometime in the span of 72 hours, this retired midwestern farming couple should have miraculously acquired the skeptical savvy of moral-less Wall Street to realize that those whom they had trusted not only could no longer be trusted, but that they could not accept as gospel what these merchants of deception were saying.
 
 
 45
 What is worse, all this is done in the name of no genuine controversy of fact. Summary judgment is indeed being used to deny a trial of the critical facts.
 
 
 46
 More important, in Pettinelli, "[t]he parties were both represented by counsel and specifically advised not to rely on any representations.... From the beginning of the negotiations it was clear that the parties were in an adversarial relationship.... Throughout this negotiation, appellants knew from their own dealings that they should not rely on any representations made by the defendants." Id. (citations omitted) (emphasis supplied).
 
 
 47
 I cannot see how a rule of law, announced for seasoned, truly lawyer-advised, adversaries locked in a dispute of a litigable claim can be applied to two financially inexperienced and trusting Illinois farmers who had seen their life savings turn into $400,000 of debt. The court's sole reliance for this critical conclusion that, as a matter of law the parties were in an adversarial relationship, is derived from the memorandum prepared by attorney Sullivan two days after the Finns signed the release.
 
 
 48
 In simple terms, a fact-finder (jury or Judge) could readily find that Bache defrauded the Finns. The execution of the release was just another episode in the same series. A genuine issue of fact existed as to whether the Finns had to be conscious that the fiduciary relationship was an end so that as very new adversaries, they had no reasonable expectation to rely on the representations of Bache at the time they signed the release. Therefore, the trial court was in error in granting summary judgment on that issue.
 
 
 49
 I, therefore, respectfully dissent.
 
 
 
 *
 See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Finns also filed a concurrent state court action that subsequently was stayed pending the resolution of the federal court proceedings
 
 
 [2]
 Because the district court decided this case before the discovery period expired, the Finns' motion to supplement the record on appeal, which was carried with the case by a prior panel, is granted
 
 
 [3]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981
 
 
 [4]
 In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit
 
 
 [5]
 The release explicitly provides that Florida law governs its terms
 
 
 [6]
 The Finns' argument that the fiduciary nature of their relationship with Bache justified their reliance ignores the fact that the plaintiffs in Pettinelli were in a similar relationship with the defendants and nevertheless the court held that any reliance was unreasonable as a matter of law
 
 
 [7]
 Because of our disposition of this case, we need not address the Finns' argument that the district court abused its discretion by curtailing discovery prematurely. We also note our agreement with the district court that the Finns' claim that the release is void for lack of consideration is without merit