[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 27, 2005
THOMAS K. KAHN
CLERK

No. 03-12233
Non-Argument Calendar

_____

D.C. Docket No. 01-10105-CV-KING

INDUSTRIAL COMMUNICATIONS
AND ELECTRONICS, INC.,

                                                    Plaintiff-Appellant,

        versus

MONROE COUNTY,
MONROE COUNTY COMMISSION,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(May 27, 2005)

Before ANDERSON and WILSON, Circuit Judges, and SHAPIRO*, District
Judge.

_____

*Honorable. Norma L. Shapiro, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

PER CURIAM:

Plaintiff, Industrial Communications and Electronics Inc. ("ICE"), filed this action against Monroe County and the Monroe County Commission for violating Section 704 of the Federal Telecommunications Act of 1996 (47 U.S.C. § 1332(c)(7)(b)(5)) ("TCA"), and the Fifth and Fourteenth Amendments to the United States Constitution. ICE appeals the District Court order granting defendants' motion to dismiss.

## FACTS AND PROCEDURAL HISTORY

ICE is licensed by the Federal Communication Commission to provide Monroe County with wide area specialized mobile radio service. This technology operates by transmitting a low power radio signal between a wireless telephone and an antenna mounted on a tower.

In mid-1998, ICE representatives held discussions with Monroe County officials about constructing a tower, one thousand feet high,[1] at the Cudjoe Key Quarry.[2] On February 22, 2001, the Monroe County Commission adopted a moratorium (the " first moratorium") on construction of communication towers in "excess of 100 feet." Monroe County, Fl., Resolution 117-2001 (Feb. 22, 2001).

_____

[1] ICE eventually proposed constructing a tower, 970 feet high.

[2] There is a dispute over ICE's ownership interest in this property but it is irrelevant to this decision.

On March 12, 2001, ICE filed an action against Monroe County in state court. Industrial Communications and Electronics Inc. v. County of Monroe, No. 01-334 (Fla. 16th Cir. Ct. 2001). The complaint, alleging federal constitutional and statutory violations, prayed for declaratory and injunctive relief against the Monroe County moratorium. The February 22, 2001 moratorium was subsequently amended on two occasions before Monroe County adopted its ordinance prohibiting towers higher than 350 feet on September 12, 2001.

On March 22, 2001, during the pendency of the ICE state court action, Monroe County amended the first moratorium to allow a tower to be replaced by one of equal or lesser height (the "amended moratorium"). On June 8, 2001, the state court held the first moratorium on new towers was a valid exercise of police power. ICE did not appeal the decision and the record does not reveal whether ICE challenged the amended moratorium during the action. On August 20, 2001, Monroe County extended the amended moratorium (the "extended moratorium"). A county ordinance prohibiting towers higher than 350 feet was adopted on September 12, 2001.

Two months later, ICE filed this action in federal district court. The ICE federal action challenged the Monroe County moratoria, but not the ordinance adopted September 12, 2001. Whether that ordinance violated ICE's statutory or

3

constitutional rights was not at issue. The district court granted defendants' motion to dismiss on grounds of *res judicata* or collateral estoppel. ICE has appealed.

## DISCUSSION

We must determine, *sua sponte*, whether the district court had subject matter jurisdiction to hear the action even if the parties have not challenged it. <u>See</u>, <u>Finn v. Prudential-Bache Securities, Inc.</u>, 821 F.2d 581 (11th Cir. 1987). Federal statutes prohibit lower federal courts from exercising subject matter jurisdiction in an "appeal" from a state court judgment. Under 28 U.S.C. §1331, a federal district court is a court of original jurisdiction and, under 28 U.S.C. § 1257, federal appellate review of a state court proceeding is limited to the United States Supreme Court.

In <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), the Court held the lower federal courts should not have heard the action after it had been litigated in state court because under Section 1331 only the Supreme Court could entertain a proceeding to reverse or modify the state court judgment for errors of constitutional law. <u>Id.</u>, at 416.

In <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983),

the District Court of Appeals had denied petitioner's application for an exception to the local rules of bar admission.  Plaintiff's action in federal district court to overrule this judicial determination was denied for lack of subject matter jurisdiction.  The Supreme Court held the District Court lacked jurisdiction to hear the action because plaintiff's allegations were "inextricably intertwined with" decisions of the District of Columbia Court made in a judicial capacity.[3]

The Supreme Court recently noted *Rooker-Feldman* "recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see § 1257(a)."  Exxon Mobil Corp. v. Saudi Basic Industries Corp., No. 03-1696, 2005 WL 711586, at *7  (U.S. 2005).[4]  Under *the Rooker-Feldman* doctrine a lower federal court lacks subject matter jurisdiction in a claim where "the relief requested ... requires determining that the

---

[3] This determination did not dispose of the entire case because the District Court had acted legislatively, not judicially, in promulgating the bar admission rule.   The District Court was not barred from addressing the validity of the admission rule.

[4] Exxon limits the application of *Rooker-Feldman* to cases similar to the present action: "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon, 2005 WL 711586, at *2. *Rooker-Feldman* did not preclude the federal district court from exercising jurisdiction in Exxon because, unlike the present action, the federal and state court actions in Exxon had been filed concurrently.  Id., at *8.  When a state court first determines an issue as to which there is concurrent jurisdiction, the rules of *res judicata* and collateral estoppel apply in the federal action. Id.

state court's decision is wrong or ... void[ing] the state court's ruling." <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 F.3d 411, 419 (3d Cir. 2003).

*Rooker-Feldman* applies to claims that were litigated, as well as claims that were not raised in state court but were "inextricably intertwined" with the state court judgment.  <u>Feldman</u>, 460 at 482 n.16.  This prohibits a federal plaintiff from raising a new federal law claim if there was a reasonable opportunity to raise it during the state court proceeding.  <u>Wood v. Orange County</u>, 715 F.2d 1543, 1546-47 (11th Cir. 1983), <u>cert.</u> <u>denied</u>, 467 U.S. 1210 (1984).  *Rooker-Feldman* applies to decisions of federal district and circuit courts alike.  <u>Powell v. Powell</u>, 80 F.3d 464, 467 (11th Cir. 1996).  A litigant may not avoid the doctrine by electing not to appeal an adverse state trial judgment.

The district court held the complaint in this action was barred by collateral estoppel.  Applying *res judicata* or collateral estoppel in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, requiring a federal court to give the same effect to the judgment as would the rendering state.  A dismissal on collateral estoppel grounds is a dismissal on the merits.  If the *Rooker-Feldman* doctrine prohibits a district court from hearing a case it must be dismissed for lack of subject matter jurisdiction.

A. Accrual of the Cause of Action

*Rooker-Feldman* bars lower federal court jurisdiction over a judicial determination made by a state court where four criteria are met: (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment. Amos v. Glynn County Board of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003).

The first two criteria required under Amos are met so we begin our analysis with the third: did ICE have a reasonable opportunity to raise its federal claims in the state court proceeding?

ICE contends its "federal causes of action" had not accrued and were not ripe for adjudication when its state court action was filed. Monroe County adopted the first moratorium prohibiting towers "in excess of 100 feet" on February 22, 2001. Monroe County, Fl., Resolution 117-2001 (Feb. 22, 2001). ICE filed its state court complaint on March 12, 2001. Ten days later, Monroe County adopted the amended moratorium. On June 8, 2001, the state court upheld

7

the validity of the Monroe County moratorium; on August 20, 2001, the extended moratorium was adopted.

ICE argues new causes of action accrued when Monroe County adopted the amended and extended moratoria. However, the only difference between the first moratorium, and the subsequent moratoria, was that the subsequent moratoria included a grandfather clause for existing towers. That did not give rise to new causes of action. If ICE believed that the grandfather clause presented a new cause of action it could have argued that during the pendency of the state court litigation instead of waiting to raise the issue in its federal complaint. Because ICE had the opportunity to raise its federal claims in the state court proceeding, the third criteria of the Amos test is met.

The fourth criteria of the Amos test is whether the issues before the federal court were either adjudicated by the state court or were inextricably intertwined with the state court's judgment. Plaintiff's federal complaint concerning the moratoria listed four violations: (1) the TCA; (2) the Equal Protection Clause of the Fourteenth Amendment; (3) the Due Process Clause of the Fourteenth Amendment; and (4) the Fifth Amendment's Taking Clause.

8

B. Count I - Violation of the Federal Telecommunications Act of 1996

Appellant contends its first count asserts a new claim: Monroe County violated Section 704 of the TCA by unreasonably discriminating against ICE in favor of existing cellular providers, by failing to act on the ICE application within a reasonable time, and denying a request to build a wireless facility when that decision was not supported by "substantial evidence contained in the written record." ICE's arguments under Section 704 of the TCA are all "inextricably intertwined" with parallel allegations contained in its former state court complaint. ICE cannot rely on this new count to circumvent the *Rooker-Feldman* doctrine because it had an opportunity to raise these allegations in state court; the TCA expressly provides for state court jurisdiction. 47 U.S.C. § 332(c)(7)(b)(5).

C. Counts II and III - Denial of Equal Protection and Substantive Due Process

The ICE equal protection claim repeats the arguments set forth in its first count and reiterates the allegation that the first moratorium discriminated among providers of wireless services. The due process claim restates allegations that were raised in its former state court action. The ICE state court complaint asserted the Monroe County moratorium "arbitrarily deprive[d] the Plaintiff of due process

9

of law…and the Fourteenth Amendment to the Constitution of the United States of America." ¶20. The ICE federal court action by alleges that the Monroe County moratoria were "unreasonable, arbitrary and capricious and lacking in any rational basis." ¶56. These allegations are barred by *Rooker-Feldman* as they are inextricably intertwined, if not substantively identical, with the claims raised in the former state court complaint.

D. Count IV - Taking of Property Without Compensation

ICE argues appellees have violated the Takings Clause of the Fifth Amendment by denying it an economically viable use of its FCC licenses within Monroe County. ICE already argued that it had been denied "just and fair use of its property" in its state court complaint. ¶20. ICE may not now appeal that ruling by filing a new complaint reiterating the same allegations in federal court. ICE could have appealed the state court ruling to the Florida appellate courts and the United States Supreme Court instead of filing a new complaint in federal court collaterally attacking the state court judgment.[5] Under the *Rooker-Feldman*

_____

[5]Potential federal court litigants are required to pursue any available state court remedies that might lead to just compensation before initiating a federal action for a Takings Clause violation. Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnston City, 473 U.S. 172 (1985). In this Circuit, would-be federal plaintiffs in Takings Clause actions are allowed to make a formal reservation in the state court proceedings of their intent to bring their just compensation claim in federal court should the state court, applying state court law, find adversely to them. Jennings v. Caddo Parish School Bd., 531 F.2d 1331, 1332 (5th Cir.), cert

doctrine, the district court lacked jurisdiction over the claim of ICE.

## CONCLUSION

We VACATE the judgment of the district court, and REMAND to that court

with instructions to dismiss the complaint for lack of jurisdiction.

VACATED and REMANDED.

---

denied, 429 U.S. 897 (1976).  The reservation is effective because the litigant is "involuntarily pursu[ing] state court proceedings."  Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299 (11th Cir. 1992).  ICE did not make a *Jennings* reservation for its Taking Clause claim in state court and is now barred from litigating this claim in federal district court.

11