698 So.2d 621 (1997)
Robert E. SPONGA, Appellant,
v.
Angela WARRO, Appellee.
No. 96-2984.
District Court of Appeal of Florida, Fifth District.
August 29, 1997.
*622 David C. Knapp, of Rogers, Dowling, Fleming & Coleman, P.A., Orlando, for Appellant.
Gregory S. Hansen, of Frese, Nash & Torpy, P.A., Melbourne, for Appellee.
GRIFFIN, Chief Judge.
This is an appeal of an order entered pursuant to Rule 1.540, Florida Rules of Civil Procedure. The order purports to set aside a final order of dismissal based on a settlement agreement executed by the parties after mediation. The agreement was set aside on the basis of newly discovered evidence. We reverse.
On April 8, 1994, Angela Warro was involved in an automobile accident with Robert E. Sponga. Warro later brought suit against Sponga for negligence, seeking to recover damages for permanent injuries allegedly sustained in the accident.
Warro saw a number of physicians prior to trial, apparently seeking treatment for her injuries. In December 1995, Warro went to an orthopaedist, Dr. Anthony Lombardo, complaining of "bilateral" shoulder pain. Warro apparently claimed her left shoulder had been injured in the accident.
In January 1996, Dr. Lombardo informed Warro that she would need surgery on her left shoulder. Warro's counsel related the potential need for surgery to Sponga's counsel by letter dated January 25, 1996, stating:
Today I was advised telephonically, that my client was informed by her orthopedic physician, that he is recommending surgery on her shoulder as a result of the impingement syndrome received in the accident.
Warro's counsel followed up by asking Dr. Lombardo for a narrative report concerning Warro's injuries, which among other things was to consider whether Warro had suffered a permanent impairment or injury as a result of the accident.
Dr. Lombardo summarized his findings concerning Warro's left shoulder in a report dated February 19, 1996. The report, which is somewhat garbled, stated in relevant part as follows:
The injection of both left and right side gave her relief of left shoulder pain by January 15, 1996, but the right shoulder was still quite painful. She still showed signs of impingement with diminished range of motion, as well as with pain with any overhead activity or any internal rotation. At that point, I ordered an MRI, which essentially was normal except for a pre-existing down slope anatomy of the acromion which was causing some impingement, but was not caused by the accident. There was no evidence of any rotator cuff involvement or bursitis.
She returned to the office, where she was told that there was not much to do at this point except to see if this will get better on its own. I felt as though with the negative MRI, and the fact that there was no real objective findings for her pain with overhead activities, that she should work in a conservative manner to try to solve this problem. I did not feel at this point that surgery would be in her best interest since there was nothing really positive on the MRI. I did feel that if she continued to have pain and could not live with the situation, that an arthroscopic *623 evaluation of the shoulder could be done with decompression of the anterior hook of the acromion. I do not feel that this is actually part of an injury that she suffered in a car accident, and this is a result of her normal anatomy that has flared up this condition.

I do not anticipate any further diagnostic studies as everything has been done. She may benefit from physical therapy if she becomes deconditioned, and she does have some impairment with regards to lifting anything overhead and lifting greater than 30 pounds in each arm. There are within medical certainty, that she would have problems....
(emphasis added).
After Warro had received Dr. Lombardo's report, the case proceeded to mediation on March 6, 1996, pursuant to which Sponga and/or his insurance company agreed to pay Warro $12,500 in exchange for Warro's agreement to release and discharge Sponga from:
any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the Undersigned now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforseen, bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 8th day of April, 1994, in Brevard County, Florida.
The agreement also recognized:
IT IS UNDERSTOOD AND AGREED that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said release denies liability therefore and intends merely to avoid litigation and buy their peace.
The Undersigned hereby declares and represents that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the Undersigned relies wholly upon the Undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.
Based on the settlement, the parties stipulated to the dismissal of the complaint with prejudice. Accordingly, a final order of dismissal was entered on March 7, 1996.
Warro filed a motion for relief from judgment under rule 1.540 on April 15, 1996, alleging that the order of dismissal should be set aside on the basis of "mistake" or "newly discovered evidence." In her motion, Warro complained that Dr. Lombardo had made a "serious error" in his preparation of his original report and that, in reliance on the erroneous report, she had agreed to accept $12,500 in compensation, which was less than she would have accepted if she had known that Dr. Lombardo related the left shoulder pain to the accident. A corrected report attached to the complaint was substantially similar to the earlier report, but stated:
At that point, I ordered an MRI, which was essentially normal except for a down slope anatomy of the acromion which was causing impingement of the rotator cuff. This down sloping acromion was not caused by the accident, but this pre-existing anatomy was aggravated by the accident that has caused the persistence of her shoulder pain and impingement-type syndrome. Although there was no evidence of any rotator cuff involvement or bursitis, she persistently had positive findings with examinations, as well as with limitations in her ability to lift overhead.
Another portion of the report stated:

I feel as though she actually has an injury that she had from the motor vehicle accident that was aggravated by her anatomy that included an anterior hook to her acromion. I feel that in regard to any future type of treatment that I do anticipate future treatment in the form of an arthroscopy *624 if she continues to have problems with her shoulder.
The court held a hearing on the motion to vacate the order of dismissal. Warro testified that, prior to settling the case, she had reviewed Dr. Lombardo's first report, which she had understood to state that her shoulder injury was not connected with the accident. She testified that due to the report she agreed to reduce her settlement demand to $12,500. Warro said that following the settlement she had continued to see Dr. Lombardo and that during the course of the treatment he made statements which she thought were inconsistent with his earlier report. Upon questioning, Dr. Lombardo explained to Warro that the report had been prepared by his staff and contained a number of inaccuracies.
The lower court ruled that Warro was entitled to set aside the final judgment on the basis of "newly discovered evidence" within the meaning of rule 1.540(b). In so holding, the court made the following findings of fact:
1. Plaintiff, Angela Warro, and her counsel exercised due diligence to obtain an opinion from Dr. Anthony Lombardo concerning the severity and causation of any injuries received in the automobile accident.
2. Despite this due diligence, plaintiff's orthopedic [sic] physician, Anthony Lombardo, prepared and forwarded to plaintiff's counsel a narrative report that contained inaccurate information concerning the causation and extent of plaintiff's injuries.
3. Plaintiff relied upon the incorrect opinion of Dr. Lombardo at mediation, and agreed to substantially reduce her settlement demands based upon the incorrect opinions stated in Dr. Lombardo's narrative report.
4. Thereafter, plaintiff continued to treat with Dr. Lombardo. During the course of additional treatment, she learned that Dr. Lombardo's narrative report contained serious inaccuracies regarding her condition.
5. Dr. Lombardo subsequently prepared a corrected narrative report where he opined that the plaintiff's injuries were causally related to the automobile accident and may require future surgery.
We begin by deciding that this is not a "newly discovered evidence" case. This is rather a case where one party entered into a mediation settlement agreement based on a unilateral mistake. Newly discovered evidence is a concept more appropriate to cases that are tried to a verdict. Here, there was no trial, no evidence was presented and the question of what might have been discovered before the case was tried can never be answered based on Ms. Warro's decision to accept the offer to settle her claim in mediation.
Nor can we conclude that this is an appropriate case for setting aside the settlement agreement and release based on unilateral mistake. Some courts have recognized that mistake may be used to rescind a release where the parties were unaware when a release was executed that the plaintiff had sustained any injury or where the plaintiff was unaware of a particular injury.[1] By contrast, a release of a claim for personal injuries may not be set aside based on a mistake of fact when the claimant's known injury proves to be more serious than was anticipated by the parties at the time of the execution of the release.[2] This latter rule is *625 based upon the view that a mistake as to the future consequences of a known injury does not involve a present mistake of fact, but instead involves an erroneous opinion or improvident guess as to the future consequences of presently known injuries. De Witt v. Miami Transit Co., 95 So.2d 898 (Fla.1957); Swilley v. Long, 215 So.2d 340 (Fla. 1st DCA 1968); Stiff v. Newman, 134 So.2d 260 (Fla. 2d DCA 1961).
This case is different: Warro contends that it was Dr. Lombardo's opinion on legal causation (not treatment protocol) that was "newly discovered." It is clear that Ms. Warro complained from the outset that her left shoulder was injured in the accident. She knew that Dr. Lombardo had told her she would need surgery due to the injury suffered in the accident. Presumably, therefore, she knew the reference in Dr. Lombardo's first letter about having advised her that there was nothing to be done to improve the condition was erroneous. Yet no inquiry was made by Warro to verify what she now claims was critical to her decisionwhether her physician would relate her injury to the accident. Even if this were a kind of mistake that could support a withdrawal from a settlement on the ground of mistake, the facts will not scale the barrier of lack of due care.
Finally, we think that cases settled in mediation are especially unsuited for the liberal application of a rule allowing rescission of a settlement agreement based on unilateral mistake. Mediation, like arbitration, is an alternative dispute resolution device. It is not to be engaged in casually or carelessly. The decision to engage in mediation and to settle at mediation means that remedies and options otherwise available through the judicial system are foregone. The finality of it once the parties have set down their agreement in writing is critical. A party who makes the decision to settle with a plaintiff like Ms. Warro is entitled to rely on the finality of the mediation agreement. The burden of ascertaining the true facts concerning the cause of a plaintiff's injury prior to electing to settle a case in mediation has to be on the plaintiff. The mediation rules treat cases where agreement is reached differently from a case where no agreement is reached. Also, mediation proceedings are confidential and what transpires during mediation may not be revealed. Even though Ms. Warro did not testify about what was said during mediation, only what she believed while engaging in mediation, an opposing party in the position of Mr. Sponga may be disadvantaged in impeaching or rebutting such claims of mistake because they cannot introduce evidence of what occurred during the mediation process. In fact, the settlement sum agreed to in mediation appears to lack any logical basis if it weren't based on the shoulder injury. In sum, we conclude that, as a matter of law, Warro was not entitled to withdraw her agreement to settle her claim based on the errors in Dr. Lombardo's letter.
REVERSED and REMANDED.
W. SHARP and HARRIS, JJ., concur.
NOTES
[1] Boole v. Florida Power & Light Co., 147 Fla. 589, 3 So.2d 335 (1941); Cardinale v. Thompson, 592 So.2d 799 (Fla. 4th DCA), review denied, 602 So.2d 943 (Fla.1992); Broz v. Winn-Dixie Stores, Inc., 512 So.2d 335 (Fla. 3d DCA 1987).
[2] De Witt v. Miami Transit Co., 95 So.2d 898 (Fla.1957); Frechter v. K Mart Corp., 578 So.2d 316 (Fla. 3d DCA) (release of customer's claim for personal injuries sustained in slip and fall at department store would not be set aside based on alleged mutual mistake of fact, where both parties were fully aware at time that release was signed that customer had suffered knee injury in accident, although full extent of injury was not known, and knee injury deteriorated subsequent to signing of release), review denied, 589 So.2d 290 (Fla.1991); Van de Water v. Echols, 382 So.2d 147 (Fla. 4th DCA 1980); Hughes v. State Farm Mut. Auto. Ins. Co., 294 So.2d 398, 399 (Fla. 1st DCA 1974); Swilley v. Long, 215 So.2d 340, 341-42 (Fla. 1st DCA 1968) (plaintiff who reported to defendant's insurer that doctor found that plaintiff's injuries consisted only of a contusion and sprain of the lower back and who after release of insurer from all claims consulted another doctor whose examination revealed a herniated disc was barred from further relief against insurer and could not invalidate release on ground of mutual mistake); Ormsby v. Ginolfi, 107 So.2d 272 (Fla. 3d DCA 1958), cert. denied, 114 So.2d 439 (Fla.1959).