PER CURIAM.
In this workers’ compensation case, Claimant seeks reversal of the Judge of Compensation Claims’ (JCC’s) denial of his motion to vacate a settlement. Claimant argues that his carotid cavernous fistula (CCF) was a condition unknown to the parties at the time of settlement, rather than an unknown manifestation of Claimant’s known injury, as found by the JCC. We agree with the JCC’s conclusion, and affirm the order on appeal.

Background

The facts are not in dispute. On July 20, 2006, Claimant’s supervisor hit him with a radio, on the top left side of his head. Claimant received emergency treatment on the date of the accident for a head trauma and scalp laceration, including staples for the laceration and a CT scan of his neck and brain.
Because of continuing complaints of headaches with occasional nausea and vomiting, Claimant was referred to a neurologist, Dr. Martinez, who saw Claimant first on September 5, 2006. Dr. Martinez’s diagnosis was post-traumatic neuralgic syndrome, which referred to the pain in and around Claimant’s left eye, and post-concussion syndrome, which is seen with head injuries. Dr. Martinez recommended a brain MRI and an EEG because of the trauma to the brain and because time had passed and Claimant was not improving. The doctor also prescribed Lyrica for the nerve pain. Dr. Martinez testified that both the MRI and the EEG were normal. He next saw Claimant on September 26, 2006. The doctor noted Claimant’s exam was normal, as it had been on September 5. His impression was of post-concussion syndrome with no evidence of any intra-cranial lesion. He advised Claimant to take Lyrica for a couple more months and return to see him in six weeks; he released Claimant for full-duty work. Dr. Martinez testified that at the time of that September 26 exam, which was the last time he saw Claimant, he did not expect any residual dysfunction and anticipated Claimant would reach maximum medical improvement in six to eight weeks.
On November 18, 2006, Claimant, who was represented by an attorney, participated in a voluntary, private mediation. The mediation report states: “The parties completely resolved all issues as set forth in the attached Mediation Settlement Agreement.” Claimant and his attorney signed the Settlement Agreement and Release on December 7, 2006, and the JCC entered an order approving the parties’ agreement on December 29, 2006.
On January 16, 2009, Claimant filed a Motion to Vacate or Set Aside Settlement Agreement and Release on grounds he has a CCF — an unknown injury that was not within the contemplation of the parties. The E/C responded on January 29, 2009, that there was no mutual mistake of fact as the only mistake was Claimant’s failure to ascertain the severity of his condition. Further, there was no mistake as to the terms and legal effect of settling Claimant’s right to future workers’ compensation benefits.
During his deposition taken on April 14, 2009, Dr. Martinez was questioned about his review of Claimant’s medical records for treatment received in February 2007 at Bascom Palmer Eye Institute. Dr. Martinez noted that on February 19, 2007, Claimant reported to the physicians at Bascom Palmer that he had pain in his right eye and on exam the eye was noted to be protruding and the veins were dilated. The doctor further noted that, based on diagnostic testing, Bascom Palmer phy *1122 sicians found Claimant to be suffering from CCF, which he explained was “an abnormal connection between the arteries in the brain and the veins in the brain.”
Dr. Martinez testified that Claimant never had symptoms associated with CCF while Claimant was under his care and that post-concussion syndrome is distinct from CCF. When asked to opine as to the major contributing cause of the CCF, Dr. Martinez testified that it would “more likely to be due to the head injury than to chance.” He further explained that head trauma is one of the common causes of CCF and the occurrence of CCF without a known cause is rare. Finally, he explained that CCF can take months or years to develop.
At the September 16, 2009, final hearing, Claimant argued that the settlement and release should be set aside based on a mutual mistake of fact as to the existence of an unknown injury — CCF. Claimant argued that this case represented an unknown injury as opposed to an unexpected consequence of a known injury. The E/C countered that Claimant, while represented, voluntarily agreed to a settlement which released the E/C from future obligations to pay any and all future benefits for injuries related to the accident or any known or unknown injuries. The E/C further argued that Claimant agreed he was responsible for any arguably related conditions not yet manifested.

Analysis

A JCC has the power to vacate or set aside settlement agreements. See Sanders v. City of Orlando, 997 So.2d 1089, 1098-95 (Fla.2008). “[A] release of a claim for personal injuries may not be set aside based on a mistake of fact when the claimant’s known injury proves to be more serious than was anticipated by the parties at the execution of the release.” Sponga v. Warro, 698 So.2d 621, 624 (Fla. 5th DCA 1997). It was known that Claimant sustained an injury to his head/brain. His complaints included nausea, vomiting, and headaches. Multiple diagnostic studies— CT scan of the brain, brain MRI, EEG— were conducted in an effort to explain Claimant’s symptoms. Claimant was still complaining of headaches at the time of the November 2006 mediation, yet he had not returned to see Dr. Martinez as he had been instructed in September 2006. Instead, while represented by counsel, he voluntarily entered into a settlement agreement at the mediation which resolved all rights he had under the workers’ compensation law on account of the July 2006 workplace accident.
The facts in Swilley v. Long, 215 So.2d 340 (Fla. 1st DCA 1968), are remarkably similar to the facts in this case. Swilley was diagnosed with a contusion and sprain of his lower back as a result of a motor vehicle accident. Id. at 340. Thereafter, he agreed to settle his case. Id. “Based upon such agreement, a general release of all claims by plaintiff against defendant was prepared and executed.” Id. Because plaintiff continued to have back pain after he settled the case, he went to a new doctor who diagnosed a herniated disc for which surgery was performed. Id. at 340-41. A summary judgment was rendered in favor of defendant based on plaintiff having executed a general release. Id. at 341. This court affirmed the trial court:
In the case sub judice it was known to both parties that plaintiff suffered an injury to his lower back which resulted in pain to both his back and legs.... Neither party knew nor had reason to believe that the consequences of the known injury were more serious than those discovered and reported by plaintiffs doctors. The injured disc condition was not discovered until later by another doctor, but this is only an additional *1123 consequence of the known injury and not a mistake as to the existence of the injury itself.
Id. at 841-42.
Similarly, here, both parties knew Claimant suffered an injury to his head; they did not, however, know the full extent of that head injury. The JCC did not err in rejecting Claimant’s request to vacate the settlement and release because “[t]he weight of authority ... [is] that a release of a claim for personal injuries can not be voided merely because the injuries have proved more serious that the releasor, at the time of executing the release, believed them to be.” Id. at 342.
Claimant’s focus on the Fourth District’s pronouncement in Cardinale v. Thompson, 592 So.2d 799 (Fla. 4th DCA 1992), is misplaced because the appellees in Cardi-nale stipulated they were not “aware of or considered any brain injury or potential seizure activity at the time the release was executed.” Id. at 800.
Thus, the stipulation was such that the only issue remaining before the trial court was whether Cardinale’s seizure constituted an unknown consequence of a known injury, (the known blow to his left eye and orbit), or whether the seizure resulted from an unknown injury (the unknown brain injury). If the former were true, the release would not be set aside. If the latter were true, it would.
Id. The Fourth District rejected the appel-lees’ description of Cardinale’s injuries as “an injury to the head,” given the stipulations that Cardinale suffered contusions to his left eye and neck, and the appellees were not aware of a brain injury. Id. at 800-01. The statement by the court that it did “not agree with appellees’ overly broad characterization of the injuries Car-dinale sustained” was not a pronouncement of a principle of law.
We agree with the reasoning in Sponga, as did the JCC, that “cases settled in mediation are especially unsuited for the liberal application of a rule allowing rescission of a settlement agreement based on a unilateral mistake.” 698 So.2d at 625. The time to ascertain the full implication of Claimant’s injury was before the mediation. As explained by the Fifth DCA:
Mediation, like arbitration, is an alternative dispute resolution device. It is not to be engaged in casually or carelessly. The decision to engage in mediation and to settle at mediation means that remedies and options otherwise available through the judicial system are foregone. The finality of it once the parties have set done their agreement in writing is critical.
Id. The JCC rightly concluded that “parties have ... the right to make, what is apparent in hindsight, a bad bargain— especially when represented by counsel.”
AFFIRMED.
KAHN, LEWIS, and CLARK, JJ.', concur.