ELLA PAULINE BOOLE, widow, v. FLORIDA POWER & LIGHT COMPANY

3 So. (2nd) 335
Division A
Opinion Filed June 27, 1941
Rehearing Denied August 2, 1941

*Leon Harvel, Morehead & Pellot* and *Murrell & Malone,* for Plaintiff in Error; *McKay, Dixon & DeJarnette,* for Defendant in Error.

WHITFIELD, J.—In an action under Sections 7047 (4960), 7048 (4961), C. G. L., brought by the widow for the wrongful death of her husband, it is alleged that on June 11, 1938, on a public street, the defendant's truck driver "then and there negligently and carelessly drove and operated said truck so that the same collided with another Ford truck which the said Lewis V. Boole, then husband of the plaintiff, was then and there driving, whereby the said Lewis V. Boole was greatly injured about his body, from which said

injuries he died; and whereby plaintiff has lost the support, comfort, protection, and society of her said husband."

"Lewis V. Boole, as a proximate result of the collision set out in the declaration, sustained internal injuries in the region of, and to, his heart and lungs, which said injuries aggravated an existing cardiac condition, and caused a pulmonary infection, thereby resulting in his death on or about July 6, 1938."

There were pleas of not guilty, of contributory negligence and of release by the decedent in his lifetime.

A replication to the plea of release is as follows:

"At the time of the execution and delivery of the release set out in said plea the releasor and the releasee were each laboring under a mutual mistake of a past and present existing fact material to and which induced said contract of settlement, in that they each then believed that all the injuries sustained by the releasor from the collision alleged in the declaration were then known to them, that such injuries were trivial and temporary in their nature; and that they consisted only of superficial cuts and a possible fractured rib, which fracture was shown not to exist by an X-ray picture taken of said decedent and made available to both parties prior to said settlement; that said parties contracted for settlement only with reference to said known trivial injuries, for the sum of $15.00, which the parties agreed represented only the actual cost to the releasor of said X-ray photograph and his medical expenses; that the releasor had sustained in said collision and was then suffering from the more serious and permanent internal injuries described in the amendment to the declaration filed herein, which proved fatal sixteen days later; that both of said par-

ties were then ignorant of the existence of said internal injuries, both believing said known trivial injuries to be the only injuries sustained by the releasor in said collision; that said unknown injuries were not taken into contemplation in said settlement, and no sum was paid the releasor in consideration thereof."

A demurrer to the replication was overruled.

At the conclusion of all the testimony in the case, the court directed a verdict for the defendant on the ground "that the release was sufficient to constitute a bar to the cause of action." A motion for new trial was denied and exception taken.

On writ of error the plaintiff below presents the following question:

"Where the plaintiff, a widow, brings suit for the death of her husband as a result of internal injuries sustained when a certain Ford truck owned by the defendant corporation and negligently operated by its agent collided with another truck being operated by said husband, is it error for the court to direct a verdict for the defendant because of the contention of defendant that settlement with decedent was made prior to his death and supports its contention with an executed 'company' release for fifteen dollars, where there is legal evidence to support plaintiff's contention that at the time of the alleged settlement, neither party knew or could have known about the internal injuries from which the decedent succumbed sixteen days later, but where to the contrary, the evidence strongly supports plaintiff's contention that the alleged settlement was intended only to reimburse him for doctor bill and X-rays made to determine possible fracture of his ribs and that no apparent injuries existed and decedent had been told by his physician on

same day and immediately prior to said alleged settlement that the X-rays had shown negative for fracture and to accept from the defendant reimbursement for his expenses, which information was imparted to defendant's agent at time of the alleged settlement, so that neither party knew of or anticipated any injuries or necessity for settlement of same?"

Defendant in error states as a question involved the following:

"Lewis V. Boole was involved in an automobile accident on June 12, 1938. He sustained a blow to the chest not severe enough to damage his ribs, he consulted and was treated by his own family physician, who had X-rays made, which showed no fractures. No doctor examined him on behalf of the defendant. Nine days after the accident and on his own initiative he visited the office of the defendant and settled his case, signing a release. There was no intimation that the settlement was obtained through fraud, overreaching, coercion, or improper influence. Boole had suffered from a seriously diseased heart for many years, of which condition he was aware. Boole knew when he signed the release that he had not completely recovered from the effects of the accident, and the defendant's representative also knew this. Sixteen days after signing the release, and twenty-five days after the accident, Boole died from cardiac hypertrophy with miocardia changes, plumonary congestion, and hypostatic pneumonia. Plaintiff seeks to set the release aside."

The release is on printed form and is as follows:

"RELEASE AND COMPROMISE OF ALL CLAIMS

"*Miami,* Florida,
"*June 20th,* 1938

"In consideration of *Fifteen 00/00* Dollars ($15.00), paid by *Florida Power & Light* Company, the receipt of which is hereby acknowledged as the only consideration for this release, *I, Lewis Boole,* hereby compromise and settle all *my* claims against and controversies with *Florida Power & Light* Company, and in compromise of all differences between *me* and the said Company, hereby release and forever discharge the said company and its employees from all claims, rights and demands which *I* ever had or may have in connection with any and all injuries and damages to person or property resulting from or which may in the future arise or develop out of, or out of the treatment of, an accident or injury which happened at *Okeechobee Road and Palm Avenue, Hialeah, Florida,* on *June 11th, 1938.*

"*I* HAVE READ AND FULLY UNDERSTOOD THIS RELEASE.

"Signed, sealed and delivered
in the presence of:

R. T. HAYNES         LEWIS BOOLE (SEAL)

(SEAL)"

A medical witness for plaintiff testified:

"Q. Doctor, at the time you and he talked about settling for the $15.00 did you and he both think the only possibility of any injury was a fractured rib?

"A. Yes, that was all that was evident. There was no other complaints. . . .

'Q. Doctor, at the time Mr. Boole came in to see you about the X-rays and discuss the settlement; is it not a fact that you told him at that time you thought he would be all right in a few days?

"A. I don't remember exactly, but that is probably

what I said, because there was no evidence to suppose he had anything more than a contusion of his chest wall.

"Q. And it was your opinion at that time that within the course of a few days he would be all right?

"A. Yes.

"Q. And it is your best recollection that you so advised him of that fact,

"A. Yes."

A witness for plaintiff testified:

"Q. Just as clear as you can recall, tell this jury what conversation took place between the Florida Power & Light Company representative and Louis Boole at the time he received this $15.00?

"A. Well they (there) wasn't very much said. Mr. Haynes had a bunch of papers drawn up and that was for a still smaller amount than $15.00, and Louis wanted his expense of X-rays and medicine covered and nothing for himself. So, Mr. Haynes raised it to $15.00 to cover that.

"Q. Did Mr. Boole tell Mr. Haynes how much his expenses were?

"A. He said the pictures would be $15.00 and Dr. Brown he owed $4.00.

"Q. That was $19.00?

"A. Yes.

"Q. Was anything said about not giving him $19.00?

"A. Well, Mr. Haynes told him that he couldn't pay for two pictures, it wasn't his fault that the Jackson Memorial didn't make a good picture the first time and that he didn't feel like he was supposed to pay for this second picture.

"Q. In other words, they were willing to pay for one picture and pay Dr. Brown?

"A. Yes, sir.

"Q. Did he say how much that one picture would cost?

"A. I believe Louis said it was $10.00 or $15.00 for the two. I am not just sure.

"Q. They were willing to pay for the one picture and give him $10.00 for the picture and $4.00 for Dr. Brown?

"A. Yes.

"Q. So it was settled for $15.00?

"A. Yes, sir.

"Cross Examination

"Q. How did Mr. Boole come down there that day?

"A. I brought him down.

"Q. Was anybody with you?

"A. Mrs. Boole and my wife came to town with me but didn't go to the office.

"Q. Mrs. Boole, do you mean the wife or the mother of Louis Boole? Which Mrs. Boole came to town?

"A. Mrs. Louis Boole.

"Q. Where was he when you went to get him?

"A. He was in bed. He lived in one of my houses on the rear of the lot I live on.

"Q. He was in bed on that day?

"A. Yes, sir.

"Q. Did he complain on the way down town of feeling bad and having internal pains?

"A. Well he grunted so much he was just kind of ashamed to grunt.

"Q. He was in pain, wasn't he?

"A. Well I would say he was all right. You see

he would say Dr. Brown said he was all·right and the X-rays showed nothing and he guessed he was all right.

"Q. There wasn't any pressure put on him by Mr. Haynes or anybody else to make him settle this case, was there?

"A. I don't think there was.

"Q. You were there and you know about it.

"A. Yes, I was there."

The release quoted above purports to cover all claims, rights and demands which decedent ever had or may have in connection with any of the injuries and damages to person or property resulting from or which may in the future arise or develop out of or out of the treatment of, any accident or injury which happened as stated in the quoted release.

There was substantial competent evidence tending to prove the allegations of the replication quoted above, which would in effect show a mutual mistake of fact, in that neither party anticipated or contemplated that the decedent's injury was serious in its nature, and that the release was executed and the small consideration was paid to compensate for the decedent's doctor's bill and X-ray plate showing no ribs broken, which was the fear of decedent's doctor. See St. Louis-San Francisco R. Co. v. Cauthen, 112 Okla. 256, 241 P. 188, 48 A. L. R. 1447.

The release was on a printed form, the consideration being $15.00. Under the replication alleging a mutual mistake of fact as to the extent of decedent's injury and that the release was not given to cover injuries to the decedent not then known or contemplated in the execution of the release, the evidence adduced tending to show amount paid for the printed general release

was for expenses only and nothing for personal injuries which were assumed to be not serious. See 53 C. J. 1212; 23 R. C. L. 391.

"Where there is some substantial evidence tending to prove the issue for the plaintiff, a verdict should not be directed for defendant." Commercial Credit Co. v. Parker, 101 Fla. 928, 132 So. 640; Cason v. Fla. Power Co., 74 Fla. 1, 76 So. 535, L. R. A. 1918A, 1034; Fla. Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Gravette v. Turner, 77 Fla. 311, 81 So. 476.

Instead of directing a verdict for the defendant the cause should have been submitted to the jury with appropriate instructions, the verdict when rendered being subject to authorized judicial review. See Sec. 4363 (2696) C. G. L. and authorities cited.

Judgment reversed for appropriate proceedings.

BUFORD, CHAPMAN and TERRELL, J. J., concur.

BROWN, C. J., THOMAS and ADAMS, J. J., dissent.

ADAMS, J. (dissenting).—I find no mutual mistake of fact alleged or proven. Unexpected consequences resulted from the known facts. Such is frequently the case and is the prime reason to actuate compromise.