95 So.2d 898 (1957)
Mary M. DE WITT and Raymond DeWitt, her husband, Appellants,
v.
MIAMI TRANSIT COMPANY, a Florida corporation, Appellee.
Supreme Court of Florida, Special Division A.
June 12, 1957.
*899 Britton, Hodges & Hyman, Miami, for appellants.
Blackwell, Walker & Gray, Miami, for appellee.
THORNAL, Justice.
Appellants DeWitt, who were plaintiffs below, seek reversal of a summary final judgment entered in favor of the appellee Transit Company, defendant below, in a personal injury negligence case.
The determining point is the correctness of the ruling of the trial judge as to the effectiveness of a release as against the contention of the appellants that the release was executed under a mistake of fact.
Appellants allege that on December 3, 1951, the appellant Mary DeWitt, while a passenger on a bus of the appellee Transit Company, was injured as a result of the negligent operation of the bus. Mrs. DeWitt consulted her personal physician who after examination advised her that it was his opinion that nothing serious had resulted. On December 9, 1951, in consideration of the payment of $90, the two appellants executed a general release to the appellee Transit Company. Admittedly the $90 were paid in order to liquidate medical expenses on the assumption that the injuries were minor.
Mrs. DeWitt continued suffering until in March, 1952, her physician recommended that she consult an orthopedic specialist. On the recommendation of the Transit Company's adjuster, she did consult a specialist. On March 21, 1952, after an obviously thorough examination and based on subjective symptoms as well as x-rays of the lumbar spine, the orthopedist detected a "mild left lumbar scoliosis minimal spurring on the anterior margin of the body of the fifth lumbar vertebrae" and concluded that Mrs. DeWitt had "incurred muscular and ligamentous strains with perhaps some minor tearing in her lower back." He fitted her with a lumbar corset type support and recommended physical therapy to neck and back muscles. It was the doctor's conclusion that Mrs. DeWitt may have a "minimal amount of permanent aggravation" as a result of the injury. On the basis of this report, Mrs. DeWitt again approached the defendant for further assistance. Through its adjuster the defendant sent to the DeWitts another release with an additional check for $175. After signing the release, *900 however, the plaintiffs telephoned the adjuster and requested that it be destroyed as the amount offered was not sufficient. Thereafter on July 11, 1952, the adjuster, for the appellee, paid to the appellants the sum of $250 and obtained from them another general release.
The language of the release was typical of documents usually exchanged in such situations. Among other things it released the appellee from "any and all known and unknown personal injuries" "resulting or to result from accident that occurred on or about the 3rd day of December, 1951." In the Spring of 1953 Mrs. DeWitt was advised by the orthopedic specialist that a hip operation was indicated, it being then the view of the doctor that a congenital hip condition had probably been aggravated by the bus accident. Sometime in August of 1953, while apparently preparing for the hip operation, Mrs. DeWitt was given a myelogram examination and in the opinion of the doctor then this examination revealed the existence of a herniated disc in the fourth lumbar interspace. Corrective surgery ensued.
Upon release from the hospital, Mrs. DeWitt communicated again with the appellee's adjuster and requested additional funds to assist with her hospital expenses. In one letter dated April 20, 1953, Mrs. DeWitt stated, "I know we have no claim against you and even if we hadn't signed the agreement, I still wouldn't want to sue anyone." In response to these subsequent demands the Transit Company took the position that it had been released from all liability in the premises.
Mrs. DeWitt and her husband then instituted this suit. The Transit Company pleaded the general release of July 11, 1952. On a motion for a summary judgment by the appellee, the release was produced in court. To offset the effect of the release, the appellants by deposition and affidavits undertook to establish that the release had been executed under a mistake of fact, it being their position that they were mistaken as to the extent of the injury when the release was signed. Further to support their position they submitted the affidavit of the orthopedic specialist to the effect that when he examined Mrs. DeWitt in March of 1952 there was no evidence of a herniated intervertebral disc. The affidavit further stated that the doctor did not advise anyone with reference to the existence of a herniated disc until August of 1953, for the reason that he himself "was not convinced that such was the case until that time." The doctor's affidavit further expressed the opinion that the accident sustained on December 3, 1951, and the sustained back injury at that time "is the proximate cause for the herniating intervertebral disc."
The trial judge was of the view that the general release was valid and binding and pursuant to this view he entered a summary judgment for the appellee Transit Company. Reversal of this judgment is now sought.
The appellants contend that the release was executed under a mistake of fact, the mistake being that they thought Mrs. DeWitt had suffered minor injuries whereas her injuries were much more severe than suspected. They rely on the rule that a release executed under a mistake as to a past or present fact is not effective and should be set aside.
The appellee, of course, contends that there was no mistake; that Mrs. DeWitt knew of the general nature of her injuries; and that the occurrence of unexpected consequences would not justify setting the release aside.
Appellants rely for reversal on our opinion in Boole v. Florida Power & Light Co., 147 Fla. 589, 3 So.2d 335. In that case a man afflicted with a cardiac ailment suffered a chest injury. His doctor was of the opinion that he had a minor contusion of the chest wall. Nine days after the accident Boole executed a release in consideration of payment of medical expenses totaling $15. Sixteen days later the man died as a result of an aggravation of his heart condition *901 produced by the injury. A sharply divided court held that there was sufficient evidence of a mutual mistake as to an existing fact to justify submission of the matter to a jury.
Although at a glance the cited case may appear to be controlling, we think there is a distinction. There the mistake was as to the injury itself. The parties thought there was a minor chest contusion, whereas in actuality there was heart damage. In the case before us there was no mistake as to the injury itself. The mistake, if any, here was as to the ultimate consequences of the injury. The opinion of the orthopedist is clear that there was no evidence of a herniated disc at the outset. Although the doctor may have suspected something of this nature, he "was not convinced" of it, according to his affidavit, until August, 1953, a full thirteen months after the release was executed. Here Mrs. DeWitt and her doctors were fully informed by x-rays and otherwise that she had suffered an injury to the lower back. They merely failed to evaluate accurately at the time of the examination the ultimate product of the injury she had received.
While a release executed pursuant to a mistake as to a past or present fact may on proper showing be set aside, unknown or unexpected consequences of known injuries will not result in invalidating the release. An erroneous opinion or error of judgment respecting future conditions as a result of presently known facts will not justify setting the release aside. If the rule were otherwise no release could be safely accepted in personal injury matters. The end result would be that all such claims would be forced into litigation. Such a conclusion would be directly contrary to the policy of the law favoring amicable settlement of disputes and the avoidance of litigation.
The decisions of other states on this subject are legion. Extensive reference to them would unduly prolong this opinion. Illustrative references are: Spangler v. Kartzmark, 121 N.J. Eq. 64, 187 A. 770; Simpson v. Omaha & C.B. St. R. Co., 107 Neb. 779, 186 N.W. 1001; Annotations in 48 A.L.R. 1462, and 117 A.L.R. 1022.
Appellants further contend that the conduct of the appellee in making further payments after the first release led them to the conclusion that the release of July 11, 1952, was not final but merely in the nature of a receipt for the medical expenses. There are no allegations of fraud or over-reaching. Mrs. DeWitt herself, by her letter to appellee's adjuster following her operation, clearly establishes that she understood that the document was intended as a complete release rather than a mere receipt.
We confess that the situation portrayed by appellants inspires our sympathies. However, we have no power to adjudicate the rights of litigants on emotional bases. The law requires that the judgment be and it is hereby
Affirmed.
TERRELL, C.J., ROBERTS, J., and LOPEZ, Associate Justice, concur.