215 So.2d 630 (1968)
Irwin L. LANGBEIN, Sylvan B. Burdick and Westley W. Silvian, Appellants,
v.
Eleanor C. COMERFORD, Appellee.
No. 1960.
District Court of Appeal of Florida. Fourth District.
November 20, 1968.
Irwin L. Langbein, West Palm Beach, for appellants.
WALDEN, Chief Judge.
This appeal is from an order denying restitution to plaintiffs. Plaintiffs formerly were partners in a law firm, and sought restitution from a former client of the dissolved firm.
The attorney-client relationship of the parties was terminated by mutual agreement. As an incident to the termination, plaintiffs prepared and submitted an accounting of the trust account held by plaintiffs for defendant's benefit. The accounting showed a balance on March 25, 1963, of $15,564.80.
*631 Defendant questioned the amount of the fee plaintiffs proposed to charge. Her new attorney, therefore, negotiated a compromise fee of $9,100.00 to be paid in addition to the $12,004.37 in fees already paid and accounted for. The correctness of the accounting was not challenged.
Thereupon the parties executed a mutual release which related that an account had been submitted and that defendant had received the balance due her of $6,300.00.[1] The parties, in consideration of the settlement, agreed to release each other from any and all claims.
Some weeks later plaintiffs discovered a bookkeeping error in that a payment of approximately $2,000.00 had been withdrawn from the trust account prior to the accounting, but had not been deducted from the trust account balance by plaintiffs' bookkeeper until some time later. This amount, which constituted attorney fees and expenses, was credited to the fees paid at the time of settlement. In short, though the accounting had shown the trust balance to be $15,564.80, it was in fact only $13,557.85. Adding in some minor expenses, plaintiffs had paid $1,901.91 too much in settlement with defendant. The existence and amount of this mistake is not questioned.
The error was immediately communicated to defendant and her new attorney, but no reply was made. Plaintiffs thereupon filed their complaint alleging the computation error in defendant's favor and requesting judgment for the excess paid to defendant. In accordance with a stipulation, the case was submitted to the trial judge for disposition on the basis of the pleadings, exhibits and a deposition of defendant. As a result of this procedure, it very well may be that the issues were not properly developed before the trial court. Regardless of the reason, the trial court held for defendant based upon the legal effect of the mutual release and upon the unilateral nature of the bookkeeping error. From this decision plaintiffs appeal. We reverse.
As a preface, we note the total absence of factual dispute in this case. Prior to execution of the mutual release, only the amount of the fee to be charged was in dispute, never the balance remaining in the trust account. Nor has defendant made any claim that her position was changed in reliance upon the overpayment. It should also be noted that defendant has chosen not to defend this appeal.
Plaintiffs' complaint alleged that $1,901.91 had mistakenly been paid to defendant, and that defendant had shown no reason why she should be permitted to retain it. The proofs amply sustain the allegations.
Although the bookkeeping error was a unilateral mistake of fact, that constitutes no bar to recovery in this case. Florida case law supports the proposition that relief will be granted for unilateral mistake where the mistake goes to the substance of the agreement, is not the result of a lack of due care, and where the other party has not relied upon the mistake to his detriment.[2]
The general release executed under mistake of fact cannot prevent plaintiffs' *632 recovery. By its very terms, the release was premised upon defendant's desire to "pay all fees due attorneys" and to achieve the "return of balance of funds," both based upon the statements and accounts prepared by plaintiffs.
In Boole v. Florida Power & Light Co., 1941, 147 Fla. 589, 3 So.2d 335, the Supreme Court limited the scope of a purportedly general release to cover only those matters known or contemplated by the parties. Subsequent cases have further established in Florida the principle that a release executed pursuant to a mistake of past or present fact (as here, the balance of defendant's account) may on proper showing be set aside.[3]
Nor does the mutual release constitute an accord and satisfaction such as would preclude recovery. The scope of an accord and satisfaction, just as the scope of a release, is primarily a matter of intention.[4] Here the intention of the parties was to compromise only the amount of outstanding attorney fees.
In view of plaintiffs' showing that $1,901.91 has been paid to defendant under mistake of fact, and of defendant's failure to allege or prove any circumstances making restitution inequitable, we reverse and remand for entry of a final judgment in plaintiffs' favor.
Reversed.
OWEN, J., concurs.
CROSS, J., dissents, with opinion.
CROSS, Judge (dissenting).
I must of necessity respectfully dissent.
The mutual releases composed by the plaintiffs' attorney and executed by the parties, which the majority would lightly cast aside, read in part as follows:
"NOW, THEREFORE, in consideration of the foregoing, the parties do hereby for themselves and their legal representatives release and absolutely and forever discharge the other from any and all claims, demands, actions and causes of action, of every name and nature, so that neither of them shall have any claim on the other, directly or indirectly, on any contract or supposed liability or thing undertaken, done, or omitted to be done, from the beginning of the world to this day."
The record reveals that the plaintiffs' attorneys merely made an error in computation in seeking fees which were due a partnership which was on the verge of dissolving. Nearly three months after this unilateral mistake, which was unknown and not capable of detection by the defendant, the plaintiff attorneys now seek the recovery of this sum.
I am of the firm conviction that the case presented for this court to determine is one which falls within that category whereby a unilateral error is made in computation in preparing an offer. 3 Corbin, Contracts, § 609 (1960). By the rule generally approved, equity will not relieve against the mistake of one guilty of culpable negligence, neither will it relieve against a mistake that could have been avoided by caution. If the one seeking relief could have avoided his mistake by reasonable care or diligence, a court of equity will not relieve him. In other words, if one's mistake is due to his own negligence and lack of foresight and there is absence of fraud or imposition, equity will not relieve him. Bridges v. Thomas, Fla.App. 1960, 118 So.2d 549.
In the instant case, whether it was a failure to exercise due care or was due to *633 oversight, I am not in a position to say. It is certain that the error of approximately $1900 compared to the large sums of money in the defendant's trust fund and the amount of fees that plaintiffs charged the defendant for various services rendered would not be perceivable by the defendant. The most that can be said in this case is that the plaintiff is seeking relief from a bookkeeping error for which he alone was responsible. I am of the conviction that there was not a unilateral error in reference to a material fact relative to the contract itself. If errors of this nature could be relieved in equity, settlements fairly arrived at and releases voluntarily given become futile and nugatory. Releases would, in effect, be placed in jeopardy and there would be no stability in contractual agreements.
To allow recovery in the instant case encourages careless and slipshod bookkeeping, and in some cases, would afford a pretext for dishonest parties to relieve themselves from releases that were entered into by mutual agreement. If the relief prayed for in this case is granted, then any bookkeeping error or error in calculation can be relieved against. I am of the opinion that this is not the law in cases of this type. In 17 Am.Jur.2d, Contracts, § 146, in regard to unilateral mistakes, it is said:
"The rule supported by the authorities is that if, in the expression of the intention of one of the parties to an alleged contract, there is error, and that error is unknown to, and unsuspected by, the other party, that which was so expressed by the one party and agreed to by the other is a valid and binding contract, which the party not in error may enforce. In other words, a party to a contract cannot avoid it on the ground that he made a mistake where there has been no misrepresentation, there is no ambiguity in the terms of the contract, and the other contractor has no notice of such mistake and acts in perfect good faith. A unilateral error, it has been said, does not avoid a contract. * * *"
In Maryland Casualty Company v. Krasnek, Fla. 1965, 174 So.2d 541, although alluding to the proposition that Florida appears to hold to the minority viewpoint allowing equitable relief on the ground of a unilateral mistake in instances in which the mistake is not the result of lack of due care or in which the other party to the contract has not so far relied upon the payment that it would be inequitable to require a repayment, the supreme court distinguishes those cases which relate primarily to mistakes as to the details of a contractual relationship. Maryland Casualty Co. v. Krasnek, supra, at 544. See also O'Neill v. Broadview, Inc., Fla.App. 1959, 112 So.2d 280.
The mistake here did not prevent the release from expressing what the parties intended. In my opinion, it was a mistake as to the details merely incidental to the release. The release here was exactly what each party understood it to be, and it expressed what was intended by each. To set it aside on the theory expounded by the majority causes havoc to the stability of releases and would permit the plaintiffs herein to obtain an unconscionable advantage over the defendant who has relied upon the validity and finality of the document.
I would affirm the lower court.
NOTES
[1] The statement of account sent by plaintiffs and signed and accepted by defendant related in part:

"* * * Since some time and effort would be required to complete this matter, we have agreed to adjust our fee. Accordingly, we are prepared to accept in full payment the sum of $9,100.00. This sum deducted from $15,400.00, leaves a balance of $6,300.00, which we are prepared to deliver to you on your indication of acceptance of the above statement of account and execution of mutual releases."
[2] Maryland Cas. Co. v. Krasnek, Fla. 1965, 174 So.2d 541. The Restatement of Restitution, § 20, states as a general principle:

"A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess."
[3] De Witt v. Miami Transit Co., Fla. 1957, 95 So.2d 898; Ormsby v. Ginolfi, Fla. App. 1958, 107 So.2d 272.
[4] United States Rubber Products v. Clark, 1941, 145 Fla. 631, 200 So. 385; Best Concrete Corp. v. Oswalt Engineering Service Corp., Fla.App. 1966, 188 So.2d 587. See also Restatement of Restitution, § 11.