SOMERSET PHARMACEUTICALS,
INC., Plaintiff,

and

Gunster, Yoakley, Valdes–Fauli &
Stewart, P.A., Intervenor,

v.

James KIMBALL, et al., Defendants.

No. 94–247–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

May 19, 1999.

Stephen Charles Page, Gunster, Yoakley & Stewart, P.A., Stuart, FL, for Plaintiff.

James T. Kimball, Wesley Chapel, FL, Defendant Pro se.

Reginald Elliott Dunn, Jr., Discovery Experimental & Development, Inc., Wesley Chapel, FL, Nancy Lord, Nancy Lord, M.D., Las Vegas, NV, for Defendants.

Phillip L.B. Halpern, United States Attorney, San Diego, CA, Dennis Parker Waggoner, Benjamin H. Hill, III, Hill, Ward & Henderson, P.A., Tampa, FL, for Movants.

### ORDER

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following:

1. GUNSTER, YOAKLEY, VALDES–FAULI & STEWART, P.A. [hereinafter "Gunster, Yoakley"]'s motion to intervene for the limited purpose of enforcing the settlement agreement and supporting memorandum (Docket No.448);

2. Plaintiff SOMERSET PHARMACEUTICALS, INC. [hereinafter "Somerset"]'s motion to enforce settlement and supporting memorandum (Docket Nos. 445–446); Intervenor Gunster, Yoakley's motion to enforce the settlement agreement and for attorney's fees and supporting memorandum (Docket No.449); and Defendant DISCOVERY EXPERIMENTAL AND DEVELOPMENT, INC. [hereinafter "DEDI"]'s supplemental response (Docket No.458);

3. Plaintiff Somerset's motion for attorney's fees and supporting memorandum (Docket No.451);

4. Defendant JAMES T. KIMBALL [hereinafter "Kimball"]'s response to the above motions, Docket No. 5 in the related case, *James T. Kimball v. Somerset Pharmaceuticals, Inc. and Gunster, Yoakley, Valdes–Fauli & Stewart, P.A.*, Case No. 98–69–CIV–T–17E (M.D.Fla); and Defendant DEDI's response to the above motions, Docket No. 9 in the related case, *Discovery Experimental And Development, Inc. v. Somerset Pharmaceuticals, Inc. and Gunster, Yoakley, Valdes–Fauli & Stewart, P.A.*, Case No. 98–70–CIV–T–17E (M.D.Fla.);

5. Plaintiff Somerset's motion for summary judgment and supporting memorandum (Docket Nos. 453–54); Defendant DEDI's response (Docket No.459), and Defendant Kimball's response (Docket No.460); and

6. Plaintiff Somerset's motion for leave to file a reply to Defendant Kimball's response to its motion for summary judgment (Docket No.461).

### BACKGROUND

This controversy arises out of the settlement of the instant case and the subsequent filing of another lawsuit by two of the defendants in this case against the plaintiff and its attorneys. The instant case was filed by Somerset on June 4, 1993, against Kimball, DEDI, and others, for Lanham Act violations, unfair competition, and state and federal RICO violations. Somerset was represented in the suit by Gunster, Yoakley. The complaint

alleged that the defendants had infringed on Somerset's exclusive marketing rights to selegiline hydrochloride [hereinafter "selegiline"] under the Orphan Drug Act, 28 U.S.C. § 3670. At that time, Somerset marketed the drug, which it calls Eldepryl, exclusively in a pill form, and the drug was available only by prescription. The complaint alleged that the defendants sold a liquid formulation of selegiline through the mails, without requiring a prescription.

The discovery process in this case was contentious. It was complicated by the fact that the defendants' business documents were in the custody of the government, having been confiscated in a federal drug task force raid on the defendants' business premises. The Magistrate Judge assigned to this case entered several orders setting forth the appropriate procedures for the examination of the confiscated documents that were relevant to the litigation. *See* Docket Nos. 104, 119, 122, 135. Kimball and DEDI filed multiple objections to the orders, arguing that discovery of the documents Somerset requested would provide Somerset with access to confidential and privileged documents. *See* Docket Nos. 121, 126, 141. During the pendency of the instant case, Kimball also filed a lawsuit against employees of the Food and Drug Administration, the United States Customs Service, the Florida Department of Health and Rehabilitative Services, and the California Bureau of Narcotics Enforcement, and one of the attorneys from Gunster, Yoakley, alleging that they had conspired to put him out of business, *James T. Kimball v. Ernie Clausnitzer, Jose Cordero, Robert P. Daniti, Dennis Degan, Philip L.B. Halpern, M. Gregory Jones, Ernie Lopez, Arthur J. Mahoney, Deborah Orr, Stephen Perez, and Robert Siberski*, Case No. 95–1399–CIV–T–24E (M.D.Fla) [hereinafter *"Kimball v. Clausnitzer"*]. Among the allegations in *Kimball v. Clausnitzer* was the claim that a Gunster, Yoakley attorney had reviewed documents beyond the scope allowed in the Magistrate Judge's order and had provided those documents to Somerset, giving Somerset access to Kimball's trade secrets.

In September, 1997, the parties entered into a settlement agreement in the instant case. The settlement agreement included a mutual general release provision. In relevant part, that release provision stated that Kimball and DEDI:

> do hereby remise, release, acquit, satisfy, and forever discharge SOMERSET, and its respective assigns, legal representatives, legal successors, officers, directors, employees, shareholders, agents, nominees, parents, subsidiaries, and/or related or affiliated entities, and attorneys, including but not limited to, Gunster, Yoakley, Valdes–Fauli & Stewart, P.A. and its attorneys, and Lane and Mantell, a Professional Corporation, and its attorneys, of and from all manner of action and actions, causes and causes of action, suits, claims, debts, dues, sums of money, accounts, reckonings, specialty covenants, contracts, controversies, agreements, promises, damages, judgments, claims or demands whatsoever, known or unknown, now accrued or hereafter accruing, in law or in equity, concerning, arising out of, or in any respect relating to the claims that were or could have been alleged in the Litigation or underlying the Litigation in the event styled: *Somerset Pharmaceuticals, Inc. v. James T. Kimball, Toni Kimball, Discovery Experimental and Development, Inc., Fountain Research, B & B Freight Forwarding Service, Inc., and Robert Colin Brown,* (1996) , in the United States District Court for the Middle District of Florida; or [*Kimball v. Clausnitzer*].

The settlement agreement provides that in the event of default, the non-breaching party "shall be entitled to seek specific performance of this Agreement, an award of money damages, and preliminary and permanent injunctions against the breaching party." It also authorizes the recovery of attorney's fees by the prevailing party in any action to enforce the settlement

agreement. Pursuant to the settlement agreement, the parties filed a joint stipulation of dismissal, which was endorsed as an Order of this Court on October 3, 1997 (Docket No.441). The Order stated that "[t]his Court shall retain jurisdiction for enforcement of the Settlement Agreement." Docket No. 441, at 4.

On December 11, 1997, Kimball and DEDI each filed a lawsuit against Somerset and Gunster, Yoakley in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. The lawsuits allege that during the litigation of the instant case, Gunster, Yoakley employees copied documents containing trade secrets of Kimball and DEDI, including the formula and techniques for DEDI's liquid selegiline product, and revealed the contents of those documents to Somerset. They claim that Somerset used the information in those documents without Kimball and DEDI's permission. They further allege that Somerset and Gunster, Yoakley entered into the settlement agreement and general releases in the instant case with the intent to use the trade secrets and proprietary information owned by DEDI and Kimball, and that Somerset and Gunster Yoakley had procured the settlement agreements in an attempt to bar Kimball and DEDI from suing them for the misappropriation and use of DEDI's and Kimball's trade secrets and proprietary information. Count I of the complaint is a claim for misappropriation of trade secrets. Count 11 is a claim for civil conspiracy to misappropriate trade secrets.

The cases were removed to this Court and consolidated as *Kimball v. Somerset Pharmaceuticals, Inc. and Gunster, Yoakley, Valdes–Fauli & Stewart, P.A. and Discovery Experimental and Development, Inc. v. Somerset Pharmaceuticals, Inc. and Gunster, Yoakley, Valdes–Fauli & Stewart, P.A.*, Case No. 98–69–CIV–T–17E (M.D.Fla.) [hereinafter "Kimball v. Somerset"].

## ANALYSIS

### I. Motion to Intervene (Docket No.448)

■ Gunster, Yoakley filed a motion to intervene in this action pursuant to Federal Rule of Civil Procedure 24(b)(2) for the limited purpose of enforcing the settlement agreement. Rule 24(b) provides that "[u]pon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Gunster, Yoakley's motion was timely, Kimball and DEDI filed suit in state court on December 22, 1997, the cases were removed to this Court on January 9, 1998, and Gunster, Yoakley filed its motion to intervene on January 12, 1998. Gunster, Yoakley's claim has issues of law and fact common to the issues in the instant case. Gunster, Yoakley was a party to the settlement agreement in this litigation, and this Court's interpretation of the settlement agreement directly affects the outcome of *Kimball v. Somerset*, to which Gunster, Yoakley is a party. Further, Kimball and DEDI do no not oppose the motion to intervene. Therefore, this Court will exercise its discretion to allow Gunster, Yoakley to intervene.

### II. Motions to Enforce Settlement (Docket Nos. 445, 449)

Somerset and Gunster, Yoakley argue that the settlement agreement in the instant case bars the claims raised in *Kimball v. Somerset*, and seek enforcement of the settlement agreement. Kimball and DEDI do not dispute that the parties entered into a valid settlement agreement or that this Court has jurisdiction to enforce that agreement. However, they argue that the claims asserted in *Kimball v. Somerset* are beyond the scope of the settlement agreement. They argue further that the settlement agreement is voidable by them because they were fraudulently induced to enter into it.

A. The Scope of the Settlement Agreement

■ Somerset and Gunster, Yoakley argue that the provision of the settlement agreement releasing them from all causes of action "known or unknown, now accrued or hereafter accruing. concerning, arising out of, or in any respect relating to the claims that were or could have been alleged in the Litigation or underlying the Litigation in" the instant case or in *Kimball v. Clausnitzer* bars Kimball and DEDI from now raising the claims alleged in *Kimball v. Somerset.* Kimball and DEDI assert that their claims in *Kimball v. Somerset* are beyond the scope of the settlement agreement because: (1) they are based on acts taken by Somerset and Gunster, Yoakley after the execution of the release, (2) the claims did not accrue until after execution of the settlement agreement, and (3) the claims do not arise from or relate to the claims in the instant case or in *Kimball v. Clausnitzer.*

Simply reading the complaint in *Kimball v. Somerset* reveals that Kimball and DEDI's characterization of the claims set forth in it as being based on acts subsequent to the execution of the settlement agreement is not accurate. The complaint alleges that during the pretrial litigation of the instant case, Gunster, Yoakley attorneys copied confidential and privileged documents and provided those documents to Somerset, and that Somerset thereby obtained and used DEDI's liquid formulation for selegiline. In *Kimball v. Clausnitzer,* filed before the execution of the settlement agreement in the instant case, Kimball alleged that in the course of the litigation of the instant case, a Gunster, Yoakley attorney copied confidential and privileged documents and provided those documents to Somerset. Kimball and DEDI's complaint in *Kimball v. Somerset* makes no allegations regarding Gunster, Yoakley that it had not made in *Kimball v. Clausnitzer,* before it entered into the settlement agreement. The claims against Gunster, Yoakley alleged in *Kimball v. Somerset* are within the scope of the release. Gunster, Yoakley's motion to enforce the settlement agreement will therefore be granted.

■ DEDI and Kimball contend that the claims against Somerset alleged in the new complaint accrued after the execution of the settlement agreement, specifically, when Somerset sought FDA approval for a liquid selegiline product of its own in October 1997. The cases on which Kimball and DEDI rely in making this argument are inapposite. They concern releases that, unlike the release here, did not include provisions specifically releasing liability for causes of action accruing after the release is executed. *See United States Anchor Manufacturing, Inc. v. Rule Industries, Inc.* 27 F.3d 521 (11th Cir.1994), *Knutson v. Life Care Retirement Communities,* 493 So.2d 1133 (Fla. 4th DCA 1986). The release provision of the settlement agreement in the instant case states that it applies to claims "now accrued or hereafter accruing." The interpretation of the settlement agreement is governed by Florida contract law, under which the interpretation of the agreement is a question of law for the court, and "words ... are to be given their plain and ordinary meaning." *Schwartz v. Florida Bd. of Regents,* 807 F.2d 901, 905 (11th Cir.1987). In answering this question of contract interpretation, "[t]he court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement." *Id.* (citations omitted). Under the plain language of the release, which states that it applies to claims "now accrued or hereafter accruing," the question of when the claims raised in *Kimball v. Somerset* accrued is irrelevant to the issue of whether they are within the scope of the release.

■ Instead, the relevant question is whether the claims in *Kimball v. Somerset* "concern[ ], aris[e] out of, or in any respect relat[e] to the claims" made in the instant case or in *Kimball v. Clausnitzer.* Exami-

nation of the substance of the claims reveals that they do. The alleged misappropriation by Somerset is not only a direct result of the alleged actions of the Gunster, Yoakley attorneys during the course of the litigation of the instant case, but also the very reason that Kimball offered both in the instant case and in *Kimball v. Clausnitzer* that those actions were harmful to him. Moreover, even if the injury alleged here had not been contemplated at the time the settlement agreement was entered into, the agreement would still have barred the claims in the new complaint. Under Florida law, a general release of the type executed here bars claims based on "unknown or unexpected consequences of known injuries." *De Witt v. Miami Transit Co.,* 95 So.2d 898, 901 (Fla. 1957). The claims against Somerset in *Kimball v. Somerset* therefore fall within the causes of action released by the settlement agreement.

### B. Fraudulent Inducement

■ Kimball and DEDI argue that the settlement agreement is voidable by them because they were fraudulently induced to enter into it. Their response does not make clear what the allegedly fraudulent statements or omissions were. However, their Complaint, filed as Docket No. 2 in Kimball v. Somerset alleges that "Somerset and Gunster, Yoakley entered into the settlement agreement and general releases with the full knowledge of Somerset's intent to use to trade secrets and proprietary information owned by DEDI and Kimball, and intentionally procured these agreements to further Somerset's planned use of the trade secrets and proprietary information." *Kimball v. Somerset,* Docket No. 2 ¶ 21. "To prove fraud under Florida law, the Plaintiff must show that '1) the defendant made a false representation of past or present fact, 2) the defendant knew the statement was false, 3) the statement was made for the purpose of inducing the plaintiff to rely on it, and 4) the plaintiff's reliance was reasonable.'" *Mergens v. Dreyfoos,* 166 F.3d 1114, 1117 (11th Cir.1999) (quoting *Finn v. Pruden-*

*tial–Bache Securities, Inc.,* 821 F.2d 581, 586 (11th Cir.1987)).

■ The facts of this case are parallel in all relevant respects to the facts of *Mergens,* and the rule announced by the Eleventh Circuit in that case applies here. In *Mergens,* the Eleventh Circuit held that reliance on misrepresentations or omissions by the opposing parties negotiating a settlement agreement in the context of a contentious and adversarial relationship is unreasonable as a matter of law. *See id.* at 1118. In discussing the unreasonableness of reliance on the alleged misrepresentations in *Mergens,* the Eleventh Circuit described the relationship between the parties to the settlement agreement in that case by stating that "[a] more untrusting relationship is difficult to imagine." *Id.* While the Eleventh Circuit may have difficulty imagining it, the relationship between the parties to the settlement agreement at issue here is, if anything, even more acrimonious and less trusting than the one described in *Mergens.* At the time the parties were negotiating the settlement agreement in the instant case, Kimball had actually filed a separate lawsuit and numerous pleadings in the instant case in which he made serious accusations of misconduct against the attorneys with whom he was negotiating the settlement. For this reason, reliance by Kimball or DEDI on any alleged misrepresentations or omissions in the course of settlement negotiations was unreasonable as a matter of law. Therefore, Kimball and DEDI cannot now avoid the settlement agreement on the ground that they were fraudulently induced to enter into it.

### C. Remedy

Somerset and Gunster, Yoakley are thus entitled to relief for the breach of the settlement agreement, because the claims raised in *Kimball v. Somerset* are within the scope of the release, and Kimball and DEDI cannot avoid the settlement agreement on the ground of fraudulent inducement. Under the terms of the settlement

agreement, Somerset and Gunster, Yoakley are entitled to specific performance of the agreement, money damages, and an injunction against the breaching party. The specific performance requested by Somerset and Gunster, Yoakley, an order requiring Kimball and DEDI to dismiss the case, will not be necessary in this case, however. As is discussed below, Somerset and Gunster, Yoakley's motions for summary judgment will be granted. The only money damages Somerset and Gunster, Yoakley seek is the costs and attorney's fees incurred in seeking enforcement of the settlement agreement, their entitlement to which will be discussed in the section below regarding their motions for attorney's fees. Somerset and Gunster, Yoakley are entitled to and will receive injunctive relief prohibiting, Kimball and DEDI from filing any further lawsuits based on causes of action within the scope of the release provision of the settlement agreement.

### III. Motions for Attorney's Fees (Docket Nos. 449, 451)

Somerset and Gunster, Yoakley argue that under the terms of the settlement agreement, they are entitled to recover the attorney's fees incurred in seeking enforcement of the settlement agreement. The settlement agreement provides that:

> [I]f any legal action or other proceeding[ ] ... is brought for the enforcement of this Settlement Agreement or any of the Exhibits hereto, or because of any alleged breach or default in connection with any provision of this Settlement Agreement or any Exhibit hereto, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, court costs, and all expenses even if not taxable as court costs, incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

DEDI and Kimball provide no response to this motion beyond their arguments that the claims in *Kimball v. Somerset* are not within the scope of the settlement agreement and that they were fraudulent-

ly induced to enter into the settlement agreement. As discussed above, these arguments are without merit. Somerset and Gunster, Yoakley's motions to enforce the settlement are "legal action[s] ... brought for the enforcement of" the settlement agreement. Because the motions to enforce will be granted, Somerset and Gunster, Yoakley are the prevailing parties in those motions. By the plain language of the settlement agreement, they are entitled to recover from Kimball and DEDI the costs and attorney's fees incurred in seeking enforcement of the settlement agreement. Somerset and Gunster, Yoakley's motions for attorney's fees will therefore be granted.

### IV. Motion for Summary Judgment (Docket No. 453)

Somerset has filed essentially identical motions for summary judgment in the instant case and in *Kimball v. Somerset.* Because Somerset's motion for summary judgment is based on the merits of Kimball and DEDI's claims, it is more appropriate for the Court to address this motion in *Kimball v. Somerset* rather than in the instant case. The Court therefore adopts and incorporates by reference the Order filed this day in *Kimball v. Somerset,* a copy of which is attached hereto, granting Somerset's motion for summary judgment. Accordingly, it is

**ORDERED** that:

1. GUNSTER, YOAKLEY, VALDES–FAULI & STEWART, P.A.'s motion to intervene for the limited purpose of enforcing settlement agreement and supporting memorandum (Docket No. 448) be **GRANTED;**

2. Plaintiff SOMERSET PHARMACEUTICALS, INC.'s motion to enforce settlement (Docket No. 445) and Intervenor Gunster, Yoakley's motion to enforce settlement (Docket No. 449) be **GRANTED;** and that Defendants KIMBALL and DEDI be **PROHIBITED** from filing against Somerset or Gunster, Yoak-

ley any further lawsuits pertaining to claims within the scope of the release provision of the settlement agreement in the instant case.

4. Plaintiff Somerset's motion for attorney's fees (Docket No. 451) and Intervenor Gunster, Yoakley's motion for attorney's fees (Docket No. 449) be **GRANTED;** that all costs and attorney's fees herein incurred are hereby **TAXED** against Kimball and DEDI, in an amount later to be determined by this Court; and that Plaintiff Somerset and Intervenor Gunster, Yoakley be **DIRECTED** to submit affidavits in support of their claims for attorney's fees within ten (10) days of the filing of this Order;

5. Somerset's motion for summary judgment be **GRANTED;** and

6. Somerset's motion for leave to file a reply to Kimball's response to its motion for summary judgment (Docket No. 461) be **DENIED** as moot.

### ORDER

This cause comes before the Court on the following:

1. Defendant GUNSTER, YOAKLEY, VALDES–FAULI & STEWART, P.A. [hereinafter Gunster, Yoakley]'s motion to enforce settlement (Docket No. 4), filed January 23, 1998; and Plaintiffs JAMES T. KIMBALL [hereinafter "Kimball"] and DISCOVERY EXPERIMENTAL AND DISCOVERY, INC. [hereinafter "DEDI"]'s response (Docket No. 5), filed January 29, 1998;

2. Defendant SOMERSET PHARMACEUTICALS, INC. [hereinafter "Somerset"]'s motion for summary judgment and supporting memorandum (Docket Nos. 11–12), filed February 12, 1998; DEDI's response (Docket No. 16), filed March 12, 1998; and Kimball's response (Docket No. 17), filed March 12, 1998; and

3. Defendant Somerset's motion for leave to file a reply to DEDI's response to its motion for summary judgment (Docket No. 18), filed April 3, 1998.

The background of this litigation is set forth in detail in the Order filed this date in the related case *Somerset Pharmaceuticals, Inc. v. James T. Kimball, et al.,* (M.D.Fla.1996) [hereinafter *"Somerset v. Kimball"*], a copy of which is attached hereto, and will not be repeated here. The facts relevant to Somerset's motion for summary judgment will be set forth in this Order in the course of the discussion of that motion.

### ANALYSIS

I. Motion to Enforce Settlement (Docket No. 4)

Somerset has filed essentially identical motions to enforce a settlement agreement in the instant case and in *Somerset v. Kimball.* Because the settlement agreement was entered into in *Somerset v. Kimball,* it is more appropriate for the Court to address Somerset's motion to enforce the settlement agreement in that case rather than in the instant case. The Court therefore incorporates by reference and adopts the Order filed this day in *Somerset v. Kimball,* granting Somerset's motion to enforce the settlement agreement.

II. Motion for Summary Judgment (Docket No. 11)

Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In *Celotex,* the United States Supreme Court held:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552. "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993), (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The plaintiffs' claims in this case are based on the allegations that during the litigation of *Somerset v. Kimball,* Gunster, Yoakley employees copied documents containing trade secrets of Kimball and DEDI, including the formula and techniques for DEDI's liquid selegiline product, and revealed the contents of those documents to Somerset. Plaintiffs claim that Somerset misappropriated its technique for formulating liquid selegiline, and that soon after the parties entered into the settlement agreement, Somerset applied to the FDA for approval of a liquid selegiline product of its own. Count 1 of the complaint is a claim for misappropriation of trade secrets. Count II is a claim for civil conspiracy to misappropriate trade secrets.

Somerset moves for summary judgment on the ground that there are no disputed issues of material fact. It provides the affidavit of Dana G. Barnett, the Chief Executive Officer of Somerset, and attaches· to that affidavit numerous documents in support of its contention that Somerset had been developing and testing its liquid selegiline product since before the litigation against Kimball and DEDI was initiated.

■ The evidence as established by the affidavit and documents is as follows. In May 1990, Somerset produced three lots of liquid selegiline, and subsequently conducted a pharmacokinetic study on this formulation. *See* February 6, 1998, Affidavit of Dana G. Barnett ¶ 3a. Somerset made its first submission to the Food and Drug Administration [hereinafter "FDA"] on this product in September 1991. *See* Barnett Aff. ¶ 3a; attachment 2. In December 1994, Somerset first submitted to the FDA a New Drug Application for liquid selegiline. *See* Barnett Aff. ¶ 3b; attachment 3. The FDA required Somerset to conduct further pharmacokinetic studies, and authorized Somerset to re-submit its application when it had done so. *See* Barnett Aff. ¶ 3c–e; attachments 4, 5. After Somerset received the results of the new pharmacokinetic study required by the FDA, it re-submitted its New Drug Application to the FDA in October 1997. *See* Barnett Aff. ¶ 3f–g; attachments 6, 7.

The above chronology of events, supported not only by Barnett's testimony, but also by documents Somerset submitted to and received from the FDA, makes it factually impossible for Somerset to have based the formulation of its liquid selegiline product on information it received during discovery in *Somerset v. Kimball.* Furthermore, Barnett stated under oath that:

> at no time whatsoever in connection with Somerset's development programs, clinical trials [pharmacokinetic] trials, research, manufacturing and efforts to seek FDA approval, registration and licensure did Somerset Pharmaceuticals, Inc. ever use any information obtained from James T. Kimball or Discovery Experimental Development, Inc. obtained in discovery during litigation of [*Somerset v. Kimball* ].

**1344**

Barnett Aff. ¶ 5. He also states that Somerset did not obtain during discovery any information regarding Kimball and DEDI's formulation process, is not aware that such information existed, and does not know what formulation process Kimball and DEDI used. Barnett Aff. ¶ 6.

█ Kimball and DEDI make no response to the evidence Somerset provides in support of its motion for summary judgment, but instead argues that this Court lacks subject matter jurisdiction over the case. Kimball and DEDI concede that this Court retained jurisdiction over *Somerset v. Kimball* in its October 3, 1997, Order in that case. However, Kimball and DEDI argue that this Court's retention of jurisdiction in *Somerset v. Kimball* is not sufficient to give this Court supplemental jurisdiction over the instant case, because the instant case is not closely related to *Somerset v. Kimball*. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. Sections 1367 and 1441(a), because this case is "so related to the claims" in *Somerset v. Kimball* "that they form part of the same case or controversy." 28 U.S.C. § 1367. As this Court discussed at great length in the Order filed this day in *Somerset v. Kimball*, the two cases are indeed closely related. The instant case arises out of alleged misappropriation of trade secrets that occurred during the litigation of *Somerset v. Kimball*, and is within the scope of the claims released as part of the settlement agreement executed in that case. Perhaps the best evidence of the close relationship between the two cases, however, is that the motions and responses filed in the instant case by parties on both sides of this controversy have been essentially identical to the motions and responses the same parties have filed in *Somerset v. Kimball*.

This Court has subject matter jurisdiction over this case. Kimball and DEDI provide no evidence to controvert the substantial evidence provided by Somerset that there is no genuine issue of material fact and the defendants are entitled to summary judgment as a matter of law.

Therefore, summary judgment will be granted. Accordingly, it is

**ORDERED** that:

1. Defendant Gunster, Yoakley's motion to enforce settlement (Docket No. 4) be **GRANTED;**

2. Defendant Somerset's motion for summary judgment (Docket No. 11) be **GRANTED;** and judgment be entered for Defendants Somerset and Gunster, Yoakley; and

3. Defendant Somerset's motion for leave to file a reply to DEDI's response to its motion for summary judgment (Docket No. 18) be **DENIED** as moot.